# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Kenneth P. Kellogg, Rachel Kellogg
and Kellogg Farms, Inc., Roland B. Bromley
and Bromley Ranch, LLC, individually, and
on behalf of all others similarly situated,

Court File No._____

                    Plaintiffs,

v.

Watts Guerra, LLP, Daniel M.
Homolka, P.A., Yira Law Office LTD,
Hovland and Rasmus, PLLC, Dewald Deaver,
P.C., LLO, Givens Law, LLC, Mauro, Archer
& Associates, LLC, Johnson Law Group,
Wagner Reese, LLP, VanDerGinst Law, P.C.,
Patton, Hoversten & Berg, P.A., Cross Law Firm, LLC,
Law Office of Michael Miller, Pagel Weikum, PLLP,
Wojtalewicz Law Firm, Ltd., Mikal C. Watts,
Francisco Guerra, and John Does 1-50,

                    Defendants.

## CLASS ACTION COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF AND DAMAGES

## DEMAND FOR JURY TRIAL

Dated: April 24, 2018

# TABLE OF CONTENTS

SUMMARY OF CLAIM …………………………………………………..…………  1

PARTIES ……………………………………………………………….…………  13

    A.     Plaintiffs………………………………………………………….………  13

    B.     Defendants Watts Guerra, LLP, Mikal Watts, Francisco Guerra
           And Joint Venture Partners ……………………………………………..  14

    C.     Unnamed Conspirators ………………………………………….……….. 17

JURISDICTION AND VENUE …………………………………………….……….. 17

CHOICE OF LAW AND FORUM ………………………………………….……… 19

FACTS ………………………………………………………………..…- 22

    A.     Class Actions With Common Damages Like The Syngenta Litigation ………. 22

    B.     Defendants Exploit The "Mass-Tort … Individual Suit" Model For
           Individualized Injuries And Damages In Product Liability Litigation ………. 24

    C.     Litigation Race Was On:  Federal MDL In Kansas …………………………… 25

    D.     Town Hall Meetings, Direct Mail Solicitations, Websites, Media
           Interviews, Joint Venture Relationships ………………………………………… 27

    E.     60,000 Individual Lawsuits Filed In Minnesota State Courts ………………… 56

    F.     Secret Joint Prosecution Agreements To Exclude 60,000 Farmers From
           Class Actions In Federal MDL In Kansas And Minnesota …………………..... 59

          1.     Joint Prosecution Agreement ……………………………………..... 60

          2.     Minnesota Participation Agreement ……………………………… 62

          3.     Fraud Of Omission, Breach Of Fiduciary Duty And Professional
               Ethics Disclosure And Informed Consent Requirements ……………… 64

    G.     Settlement Term Sheet ……………………………………………………… 74

    H.     National Class Action Settlement Agreement ………………………………… 76

i

    1.  Attorneys' Fees And Expenses …………………………………… 78

    2.  Split Jurisdiction ………………………………………………….. 80

    3.  Undisclosed Joint Prosecution Agreements Showing Trade
      Of Money And Favors …………………………………………… 81

    4.  Undisclosed Agreement To Share Fees ……………………….. 81

    5.  Undisclosed Double-Dip …………………………………………… 83

    6.  Farmers Are Injured …………………………….……………86

  VIOLATIONS OF MINNESOTA RULES OF PROFESSIONAL CONDUCT ……………. 87

    A.  False Advertising………………………………………………… 87

    B.  Failure To Communicate Honestly With Clients About Litigation Options ….. 88

    C.  Breach Of Fiduciary Duties …………………………………… 89

    D.  Unreasonable Fees …………………………………………….… 91

    E.  Undisclosed Fee Agreements ………………………………… 92

    F.  Misconduct …………………………………………………… 92

 MAIL AND WIRE FRAUD
 18 U.S.C. §§ 1341, 1343 …………………………………………..……… 93

 OBSTRUCTION OF JUSTICE
 18 U.S.C. §§ 1503, 1512(c)(2) …………………………………………..… 97

 CLASS ALLEGATIONS ………………………………………….……… 98

    A.  Numerosity ……………………………………………………… 98

    B.  Common Questions Of Law And Fact …………………………..……… 99

    C.  Typicality………………………………………...……………….………100

    D.  Adequacy Of Representation ……………………………………… 100

E.      Predominance And Superiority ………………………………..…………..  100

COUNT I
DECLARATORY JUDGMENT ACT
28 U.S.C. §§ 2201 AND 2202 …………………………………………………...……….  101

COUNT II
RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT,
FEDERAL RICO (Against Mikal C. Watts, Francisco Guerra, and
Watts Guerra, LLP), 18 U.S. C. § 1962(c) …………………………………………...……..……  102

A.      Defendants/Enterprises …………………………………………...…..…..………  102

B.      Pattern Of Racketeering Activity …………………………………………………  105

COUNT III
RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, FEDERAL
RICO CONSPIRACY (Against Joint Venture Partners/Conspirators),
18 U.S. C. § 1962(d) 104 ……………………………………………………………………  107

COUNT IV
PREVENTION OF CONSUMER FRAUD ACT, MINN. STAT. §§ 325F.68-70 …………  110

COUNT V
FALSE STATEMENT IN ADVERTISING ACT, MINN. STAT. § 325F.67 …………..….  112

COUNT VI
UNIFORM DECEPTIVE TRADE PRACTICES ACT, MINN. STAT. §§ 325D.43-48 …..  114

COUNT VII
MISCONDUCT BY ATTORNEYS, PENALTIES FOR DECEIT OR COLLUSION,
MINN. STAT. §§ 481.071 AND 481.07 ……………………………………………………  116

COUNT VIII
BREACH OF FIDUCIARY DUTY …………………………………………………..…  121

COUNT IX
FRAUDULENT MISREPRESENTATION ………………………………………..……..  124

COUNT X
NEGLIGENT MISREPRESENTATION …………………………………………..…….  126

COUNT XI
FRAUDULENT INDUCEMENT …………………………………………………......…  127

COUNT XII
FRAUDULENT EXECUTION …………………………………………………..…… 129

COUNT XIII
AIDING AND ABETTING BREACH OF FIDUCIARY OBLIGATIONS
AND FRAUD ………………………………………………………………………. 131

COUNT XIV
CIVIL CONSPIRACY ………………………………………………………..…… 133

DECLARATORY AND INJUNCTIVE RELIEF …………………………………..…… 134

MONETARY DAMAGES …………………………………………………….…… 135

JURY TRIAL DEMAND …………………………………………………………..…… 136

REQUEST FOR RELIEF …………………………………………………………..… 136

Plaintiffs Kenneth P. Kellogg, Rachel Kellogg and Kellogg Farms, Inc., and

Roland B. Bromley and Bromley Ranch, LLC, bring this Class Action Complaint

individually, and on behalf of similarly situated corn growers ("Farmers") across the

United States, against Defendants Watts Guerra, LLP, Daniel M. Homolka, P.A., Yira

Law Office LTD, Hovland & Rasmus, PLLC, Dewald Deaver P.C., LLO, Givens Law,

LLC, Mauro, Archer & Associates, LLC, Johnson Law Group, Wagner Reese, LLP,

VanDerGinst Law, P.C., Patton, Hoversten & Berg, P.A., Cross Law Firm, LLC, Law

Office of Michael Miller, Pagel Weikum, PLLP, Wojtalewicz Law Firm, Ltd., Mikal C.

Watts, Francisco Guerra, and John/Jane Does (collectively "Defendants").

## SUMMARY OF CLAIM

1.      This class action addresses an attorney fee fraud scheme perpetrated by the

Defendants, a Texas law firm and its joint venture partners, lawyers and law firms in

multiple states, against 60,000 corn growers across the United States in connection with

GMO corn lawsuits against Syngenta AG ("Syngenta"), a global agricultural business,

filed in federal and state courts in 2014-17.

2.      Farmers were deceptively solicited to sign 40 percent contingent fee

retainer contracts with Defendants to pursue individual lawsuits. Farmers were secretly

excluded, without their knowledge and consent, from participating in class actions

against Syngenta in federal court multidistrict litigation ("MDL") in Kansas and the

Fourth Judicial District Court in Minnesota, where attorneys' fees are determined by the

presiding courts as fiduciaries for the members of the class. Farmers have been deprived

of the opportunity to make an informed decision as to whether to pursue an individual

claim or a class action claim without representation by Defendants, thereby subjecting

Farmers to Defendants' fraudulent scheme to extract unreasonable fees.

3.      Farmers ask the Court to declare that Defendants' retainer contracts with

Farmers are void *ab initio* and that Defendants have forfeited their claim to any

compensation from individual Farmers, and that Defendants have waived any quantum

meruit claim against Farmers through their dishonest representations and omissions and

conduct.

4.      Syngenta is the world's largest seed supplier. At the start of the litigation

there were four United States entities: Syngenta Corporation, a Delaware corporation;

Syngenta Crop Protection, LLC, a Delaware corporation with its principal place of

business in North Carolina; Syngenta Seeds, Inc., a Delaware corporation with its

principal place of business in Minnesota; and Syngenta Biotechnology, Inc., a Delaware

corporation with its principal place of business in North Carolina. In December, 2015

Syngenta Seeds, Inc., converted to Syngenta Seeds, LLC under Delaware law. In May,

2017 Syngenta AG was purchased by a Chinese corporation, ChemChina, for $43 billion.

5.      Lawsuits were filed in multiple federal and state courts arising from

Syngenta's commercialization of genetically-modified ("GMO") corn seed products

known as Viptera and Duracade (containing the trait MIR 162) without approval of such

2

corn by China, an export market. The plaintiff corn growers alleged that Syngenta's commercialization of its products caused the genetically-modified corn to be commingled throughout the corn supply in the United States; that China rejected all imports of corn from the United States because of the presence of MIR 162; that such rejection caused corn prices to drop in the United States; and that growers were harmed by that market effect. The federal and state court lawsuits include:

- *In Re: Syngenta AG MIR162 Corn Litigation*, the MDL proceeding in the United States District Court for the District of Kansas, MDL No. 2591, Case No. 14-md-2591, before U.S. District Judge John W. Lungstrum and U.S. Magistrate Judge James P. O'Hara;

- *Tweet et al v. Syngenta AG et al*, No. 3:16-cv-00255, and *Poletti et al v. Syngenta AG et al*, No. 3:15-cv-01221, in the United States District Court for the Southern District of Illinois before U.S. District Judge David R. Herndon; and

- *In re Syngenta Litigation*, No. 27-cv-15-3785 (60,000 consolidated individual claims by corn growers across the United States including 9,000 Minnesota growers) and No. 27-cv-15-12625 (class claims on behalf of 23,000 Minnesota growers) in the Minnesota Fourth Judicial (Hennepin County) District Court before Judge Laurie J. Miller.

6. On June 23, 2017, the federal MDL court entered a Judgment following a $217.7 million Kansas class jury verdict (the first bellwether trial) in favor of the plaintiffs. On September 11, 2017, a Minnesota class trial began in Hennepin County District Court. On September 25, 2017 a "global settlement was reached" with a common fund of $1.51 billion created in settlement of plaintiff corn growers' claims in all the pending lawsuits in the United States.

7. There are over 600,000 corn growers in the United States. Over 83 million

acres of corn were harvested in the United States in 2014, with an average yield of 174.2 bushels per acre, for a total 2014 corn harvest of almost 14.5 billion bushels. The damage to United States' corn growers caused by the price drop was estimated to be as much as $1.90 per bushel with a claimed damage of about $6-7 billion – and as high as $13 billion according to an April 24, 2017 tweet by defendant Mikal C. Watts through his firm twitter account.

8.     After China rejected U.S. shipments of corn and the corn futures price and delivery price of corn across the United States dropped, Farmers were deceptively solicited by Defendants to sign retainer agreements authorizing individual lawsuits against Syngenta with a 40 percent contingent attorney fee from any recovery. Farmers were dishonestly told through a barrage of television and internet advertising, direct-mail campaigns, and hundreds of in-person "town hall" community meetings from as early as December 4, 2014 and throughout 2015 and 2016 and into 2017 that a "*mass tort ... individual suit*" is better than a class action.  Farmers were dishonestly told that "*only those who sign up (with Defendants) are eligible to pursue claims.*"

9.     Farmers were dishonestly told that a "mass tort … individual suit" is better than a class action, because class actions only recover coupons for plaintiffs. Said Watts at a meeting of corn growers in Storm Lake, IA on February 2, 2015, as quoted in the Storm Lake Pilot Tribune (emphasis added): "Some of the farmers asked about the difference between his mass suit and a class action.  With a class action, Watts told them,

4

"*lawyers will get all the money* and the *farmers may get a gift certificate.*"

10.     Similarly, Bill Enyart, a member of the Watts Guerra law firm, told a meeting of farmers in Champaign, Ill. on September 23, 2015 (emphasis added):

> [Watts Guerra] is filing suits in Minnesota, where Syngenta Seeds is located, as opposed to filing in a federal court. …. Enyart said the advantage to this was that *instead of getting a discount for seed corn* in the future, *as in a class-action case*, there would be a gross settlement fee and the firm would simply send the farmer a check.

11.     Farmers were never told that they were putative class members in class actions filed in federal district courts in different states and consolidated by a panel of federal judges, a multidistrict litigation panel, into a single proceeding in U.S. District Court in Kansas, the federal MDL, on December 11, 2014. Farmers were never told that the class actions consolidated in the MDL in Kansas brought claims on behalf of corn growers across the United States. Farmers were never informed that in a class action, the presiding judge is a fiduciary for the class members, and obligated to invite and consider objections from class members and award a reasonable attorney fee as a percentage of the common fund of monetary damages for the class.

12.     Attorney fee awards in class actions, with a common fund damage award, are typically about 10-12 percent of the fund for funds of $200-900 million or larger. With the class action model, each corn grower may effectively pay 10-12 percent of claim proceeds as an attorney fee and share of the costs of the litigation. With Defendants' "mass tort …individual suit" model, each grower will pay 40 percent of the

5

claim proceeds for the same result.

13.     Defendants thereupon filed some 60,000 individual lawsuits in Minnesota state district courts because Syngenta Seeds, Inc. then had its United States headquarters in Minnesota. Defendants pled only Minnesota state claims to avoid removal to the federal court in Minnesota by Syngenta and transfer to the consolidated MDL class action proceedings in Kansas. Defendants successfully had their individual lawsuits remanded back to Minnesota when Syngenta attempted to remove the cases to federal court and the MDL.

14.     And then, knowing that the Farmers' 60,000 individual lawsuits would nevertheless effectively remain a part of the federal MDL class action and a tag-along class action in Hennepin County District Court for Minnesota growers, Defendants' counsel entered into secret Joint Prosecution Agreements with the lead class counsel in the MDL in Kansas and the Minnesota class action, with an explicit agreement to exclude the 60,000 Farmers from class certification proceedings in the MDL and Minnesota. The driving intent of the agreements, filed under seal, was to ensure the continuation of Defendants' 40 percent contingent attorney fee scheme, rather than allowing the Farmers to fall as a matter of law into the class actions where fee awards would be determined by the presiding judge.

15.     Defendants never advised Farmers of the class action proceedings in federal and state court covering the Farmers and their claims. Defendants never advised Farmers

6

of the merits of those proceedings and what is in the best interest of the Farmers. Defendants never informed Farmers that they entered into secret Joint Prosecution Agreements with lead counsel in class action lawsuits in the MDL and Minnesota to exclude Farmers from the respective classes.  Defendants effectively opted Farmers out of the class proceedings without informing them of their options and rights. *See, e.g., Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1025 (1998) (citing Newberg & Conte, *Newberg on Class Actions* § 16.16 (3d Ed. 1992) ("The decision to exercise the right of exclusion in a Rule 23(b)(3) action is an individual decision of each class member and may not be usurped by the class representative or class counsel."). There is no class action rule or authority allowing a putative class plaintiff or counsel to exercise class rights *en masse*, by attempting to effect a group-wide exclusion from an existing class. *Hanlon*, 150 F.3d at 1025. To do so would infringe on the due process rights of the individual class members who have a right to intelligently and individually choose whether to continue in a suit as a class members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77, 40 L.Ed.2d 732, 94 S. Ct. 2140 (1974).

16.    Defendants' exclusion of their 60,000 corn grower clients from class action proceedings through secret agreements, never disclosed to Farmers until sixteen months after the agreements were negotiated and signed, and never explaining why Farmers were automatically excluded from the federal MDL and Minnesota classes, is an epic fraud of omission and violates Defendants' fiduciary obligations to the Farmers and professional

responsibility rules requiring that clients be reasonably informed of litigation options and consent to the selected option. At the same time, Defendants misled the MDL and Minnesota courts through misrepresentations and omissions to believe that Defendants had complied with their fiduciary and ethical obligations to gain informed consent from individual Farmers for exclusion from the class certification proceedings and notice and opt-out procedures.

17.     Although Defendants never disclosed the September 25, 2017 settlement term sheet to Farmers, the term sheet was attached to MDL motion pleadings on March 26, 2018. The term sheet envisioned a two-prong settlement: a nationwide class action and a separate parallel inventory settlement for Defendants' 60,000 cases filed in Minnesota. The term sheet established jurisdiction with the MDL court to administer the national class action settlement, and jurisdiction with the 23rd District Court of Brazoria County, Texas, to administer the settlement of Defendants' 60,000 individual lawsuits.

18.     It is no surprise that Defendants never disclosed the term sheet to Farmers. After three years of Defendants' misuse of the Minnesota judicial system to perpetrate their "mass tort … individual suit" attorney fee fraud scheme, Defendants shamelessly negotiated the transfer of Farmers' lawsuits to a Texas court in defendant Watts Guerra's backyard, with no previous connection to the Syngenta litigation, to address Defendants' 40 percent contingent fee contracts.

19.     The Hennepin County District Court judge did not appreciate Defendants'

odious jurisdiction transfer, and the parties revised the term sheet as a National Class

Action Settlement Agreement ("Settlement Agreement") filed with the MDL court on

February 26, 2018 with claim administration under the jurisdiction of the MDL court.

The Settlement Agreement does not (1) acknowledge the secret Joint Prosecution

Agreements showing a trade of money and favors between Defendants and class counsel,

(2) disclose a fee-share agreement between Defendants and class counsel, and (3)

disclose Defendants' intended double-dip of attorneys' fees from Farmers' pockets.

When Defendants submit Farmers' claims through the national class action, Farmers, as

class members, will pay two sets of lawyers: (1) class counsel through a fee award as a

percentage of the common fund; and (2) Defendants under the terms of the individual

contingent fee contracts. A hypothetical within this complaint shows that if class counsel

are awarded 10 percent of the common fund as an attorney fee by the MDL court,

individual members of the class will pay 10 percent of their claim payment for attorneys'

fees, whereas Farmers will pay a grotesque 46 percent of their claim payment for

attorneys' fees. If class counsel are awarded 30 percent of the common fund as an

attorney fee, individual members of the class will pay 30 percent of their claim payment

for fees, whereas Farmers will pay 58 percent.

     20.     The MDL court may exercise its inherent authority to cap Defendants'

contracts with individual Farmers. However, the court will have to cap the contracts at

zero to prevent a situation where Farmers are not assessed more fees and expenses than

corn growers represented by class counsel.

21.     Defendants' "mass-tort … individual suit" attorney fee fraud scheme violates multiple rules of the Minnesota Rules of Professional Conduct (MRPC), including: Rule 7.1 prohibiting false or misleading advertising; Rule 1.4 which requires lawyers to "promptly inform the client of any decision or circumstance with respect to which the client's informed consent" is required; Rule 1.5(a) requiring lawyers to charge a reasonable fee; Rule 1.5(e)(2) requiring disclosure of fee share agreements and the client's consent); Rule 1.7 prohibiting dual representation of class members and individual clients, Rule 1.8(g) prohibiting lawyers from participating "in making an aggregate settlement of the claims of … [individual] clients unless each client gives informed consent" and "[t]he lawyer's disclosure shall include the existence and nature of all the claims involved and of the participation of each person in the settlement;" Rule 4.1 stating that in the course of representing a client, "a lawyer shall not knowingly make a false statement of fact or law;" and Rule 8.4 stating that lawyers shall not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

22.     Farmers assert federal statutory claims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*, Minnesota statutory claims under the Prevention Of Consumer Fraud Act, Minn. Stat. §§ 325F.68-70, False Statement In Advertising Act, Minn. Stat. § 325F.67, Uniform Deceptive Trade Practices Act, Minn.

Stat. §§ 325D.43-48, and Misconduct by Attorneys/Penalties for Deceit or Collusion, Minn. Stat. §§ 481.071 and 481.07, and common law claims of breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, fraudulent inducement, fraudulent execution, aiding and abetting breach of fiduciary obligations and fraud, and civil conspiracy.

23.     Whatever fees may be sought, and whether the Settlement Agreement receives final approval from the MDL court after notice and objections and withstands appellate scrutiny, has no bearing on the merits of this lawsuit. Farmers are injured by Defendants' deceit and breach of fiduciary duties. *Gilchrist v. Perl*, 387 N.W.2d 412, 417 (Minn. 1986) (*Perl III*) ("[W]e reaffirm that cases of actual fraud or bad faith result in total fee forfeiture."); *Perl v St. Paul Fire and Marine Ins. Co*., 345 N.W.2d 209, 212 (Minn. 1984) (*Perl II*) ("the client is deemed injured even if no actual loss results"); *Rice v. Perl*, 320 N.W.2d 407, 411 (Minn. 1982) (*Perl I*) ("an attorney … who breaches his duty to his client forfeits his right to compensation").

24.     As indicated, Farmers ask the Court to declare that Defendants' retainer agreements with Farmers are void *ab initio* and that Defendants have forfeited their claim to any compensation from individual Farmers, and that Defendants have waived any quantum meruit claim against Farmers through their dishonest representations and omissions and conduct.

25.     Farmers request monetary damages to the extent that Defendants claim and

capture any compensation, and treble the forfeited compensation and monetary damage, jointly and severally, pursuant to 18 U.S.C. § 1964(c) and Minn. Stat. §§ 481.071 and 481.07.

26.     Defendants' misconduct stains the administration of justice. Defendants solicited Farmers as clients through deceit and secretly traded their legal rights for money and favors. Defendants have never disclosed to Farmers the money they agreed to pay MDL and Minnesota class counsel – a share of Farmers' recovery from Syngenta (Farmers' money) – in exchange for (1) the exclusion of Farmers from the class proceedings, and (2) agreements that class counsel will not contest Defendants' 40 percent contingent fee contracts with individual farmers. At all times since the inception of Defendants' "mass tort … individual suit" attorney fee fraud scheme, Defendants placed their self-dealing financial interests above Farmers' interests.

27.     Over a century ago, the American Bar Association told lawyers, "It should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade." ABA Cannons of Professional Ethics 12 (1908). The rulings in this case should go out across the legal landscape as the just result for dishonest and greedy lawyers and law firms who craft schemes to abuse the legal process and exploit their deceived and unknowing clients, in this case, the remarkable corn growers across the United States who feed the world, to extract or attempt to extract an unreasonable fee.

**PARTIES**

A.    **Plaintiffs**

28.    Plaintiffs Kenneth P. Kellogg, Rachel Kellogg and Kellogg Farms, Inc., are North Dakota farmers and a family farm corporation engaged in the business of planting, growing, harvesting, gathering, distributing and selling corn in North Dakota. Plaintiffs signed retainer agreements with Defendants Watts Guerra, LLP, Law Office of Michael Miller, Cross Law Firm, LLC, and Pagel Weikum, LLP, on May 16 and May 21, 2015, assigning 40 percent of any gross recovery from Syngenta to the referenced defendants. Kelloggs' individual lawsuit in Hennepin County District Court is dated June 18, 2015 and a Joint Prosecution Agreement ("JPA") to automatically exclude Kelloggs' claims from the MDL class action was signed by Defendants in April, 2015 with an amended JPA signed on June 18, 2015. Kenneth and Rachel Kellogg were never informed by Defendants of the JPA and exclusion from the MDL class action.

29.    Plaintiffs Roland B. Bromley and Bromley Ranch, LLC, are North Dakota farmers and a family farm corporation engaged in the business of planting, growing, harvesting, gathering, distributing and selling corn in North Dakota. Plaintiffs signed a retainer agreement with Defendants Watts Guerra, LLP and Daniel M. Homolka, P.A. in April, 2015, assigning 40 percent of any gross recovery from Syngenta to the referenced defendants. Bromleys' individual lawsuit in Hennepin County District Court was filed on May 1, 2015 and a JPA to automatically exclude Bromleys' claims from the MDL class

13

action was signed by Defendants in April, 2015 with an amended JPA signed on June 18,

2015. Bromley was never informed by Defendants of the JPA and exclusion from the

MDL class action. Bromley signed a retainer agreement with Douglas J. Nill, PLLC and

a Substitution of Counsel was filed on May 9, 2016. On May 16, 2016, Watts Guerra

wrote a letter to Bromley asserting "we intend to retain our contractual fee interest in the

outcome of your case."

30.     Plaintiffs represent a proposed Class of all corn growers who signed

attorney retainer contracts with Watts Guerra, LLP and its joint venture partners, for

representation in claims, suits or other matters arising out of and resulting from economic

damages sustained from the use of Syngenta GMO products or those products' adverse

effect on the U.S. corn market.[1] The Class may be expanded to include others who

conspired with Defendants to pursue their attorney fee fraud scheme for financial benefit.

**B.     Defendants Watts Guerra, LLP, Mikal Watts, Francisco Guerra And Joint
        Venture Partners**

31.     Defendant Watts Guerra, LLP, is a Limited Liability Partnership with its

headquarters at 4 Dominion Drive, Bldg. 3, Suite 100, San Antonio, Texas 78257.

32.     Defendant Daniel M. Homolka, P.A., is a Professional Association with its

office at 102 Main Street S., Suite 201, Hutchinson, MN 55350 and an office at 6400

---

[1].   Plaintiffs and the proposed Class of 60,000 corn growers who signed retainer
contracts with Defendants are referenced as "Farmers" in this complaint. The 600,000
corn growers across the United States are referenced as corn growers or growers and on a
few occasions as farmers or producers.

Timber Ridge, Minneapolis, MN 55459.

33.    Defendant Yira Law Office LTD is a limited liability corporation with its principal place of business located at 102 Main Street South, # 201, PO Box 518, Hutchinson, MN 55350.

34.    Defendant Hovland & Rasmus, PLLC, is a Professional Limited Liability Company with its headquarters at Southdale Office Centre, 6800 France Avenue South, Suite 190, Edina, MN 55435.

35.    Defendant Dewald Deaver, P.C., LLO, is a Professional Corporation with its headquarters at 413 East Ave, Holdrege, NE 68949.

36.    Defendant Givens Law, LLC, is a Limited Liability Company operated by Jon T. Givens, of Anchorage, Alaska.  Upon information and belief, Mr. Givens is affiliated with Watts Guerra, LLP and maintains his office at the Watts Guerra, LLP office at 4 Dominion Drive Bldg. 2, Suite 100, San Antonio, Texas 78257.

37.    Defendant Mauro, Archer and Associates, LLC is a Limited Liability Company with a principal office at 818 Connecticut Ave. NW, # 1100, Washington, D.C. 20006.

38.    Defendant Johnson Law Group is a law firm partnership with a principal office at 2925 Richmond Ave., Suite 1700, Houston, Texas.

39.    Defendant Wagner Reese, LLP, is a Limited Liability Partnership with its principal place of business at 11939 North Meridian Street, Carmel, Indiana 46032.

15

40.     Defendant VanDerGinst Law, P.C., is a Professional Corporation with its principal place of business at 4950 38th Ave., Moline, IL 61265.

41.     Defendant Patton, Hoversten & Berg, P.A., is a Professional Association with its principal place of business at 215 E Elm Avenue, P.O. Box 249, Waseca, MN 56093-0249.

42.     Cross Law Firm, LLC, is a Limited Liability Corporation with its principal place of business at 2544 West 47th Ave., Kansas City, Kansas 66103.

43.     Law Office of Michael Miller is an apparent sole proprietorship with its principal place of business at 926 Chulie Drive, San Antonio,TX 78216.

44.     Pagel Weikum, PLLP is a Professional Limited Liability Partnership with its principal place of business at 1715 Burnt Boat Drive, Madison Suite, Bismarck, ND 58503-0853.

45.     Wojtalewicz Law Firm, Ltd., is a Limited Liability corporation with its principal place of business at 139 N. Miles St., Appleton, MN 56208.

46.     Defendant Mikal C. Watts is a partner with Watts Guerra, LLP, with its headquarters at 4 Dominion Drive, Bldg. 3, Suite 100, San Antonio, Texas 78257, and he resides in Texas.

47.     Defendant Francisco Guerra is a partner with Watts Guerra, LLP, with its headquarters at 4 Dominion Drive, Bldg. 3, Suite 100, San Antonio, Texas 78257, and he resides in Texas.

16

48.      John Does 1-50 are additional "joint venture partners" with Watts Guerra,

LLP in the Syngenta litigation; law firms and lawyers listed on fee contracts signed by

Farmers, fee-splitting with Watts Guerra, LLP and sharing in the claimed 40 percent

contingent fee. *See* Minnesota Rules of Professional Conduct, 1.5 (e)(1) (fee division

between lawyers who are not in the same firm requires referral lawyer to "assume[] joint

responsibility for the representation"). The identities of John and Jane Does are unknown

to Farmers who therefore sue them under these fictitious names. Farmers will amend the

Class Action Complaint to add their true names and capacities when they become known

through discovery.

## C.      Unnamed Conspirators

49.      Although Farmers assert claims in this Class Action Complaint against law

firms and lawyers listed on fee contracts signed by Farmers, other law firms and lawyers

conspired with Defendants to pursue their "mass tort … individual suit" attorney fee

fraud scheme, and violated fiduciary obligations to Farmers, for financial benefit. If the

unnamed conspirators claim any compensation from Farmers' claims against Syngenta,

or take any action to frustrate or oppose Farmers' efforts in this lawsuit, those parties will

be added to this Class Action Complaint as defendants and aggressively prosecuted.

## JURISDICTION AND VENUE

50.      Farmers are the approximate 60,000 individual corn growers across the

United States who are represented by Defendants. Most of those 60,000 corn growers

have cases filed against Syngenta in Minnesota state district courts and consolidated in

Hennepin County District Court, File No. 27-cv-15-3785,[2] by Order of the Minnesota

Supreme Court.[3]

51.     The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331

because this action arises under the laws of the United States, and 18 U.S.C. § 1964(c),

because this action alleges violations of the Racketeer Influenced Corrupt Organizations

Act ("RICO"), 18 U.S.C. § 1961, *et seq*.

52.     The Court also has subject-matter jurisdiction pursuant to the Class Action

Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action, including

---

[2].   The Settlement Agreement filed in the MDL court on February 26, 2018, indicates that Defendants filed 50,000 individual lawsuits in Minnesota state courts. This number may be understated. Upon information and belief, Defendants filed at least 57,000 individual lawsuits. As recent as November 14-15, 2017, after the September 25, 2017 settlement was announced to the media, Defendants filed lawsuits by individual corn growers. Defendants may have signed retainer agreements with many additional growers. Farmers assert 60,000 as a round number for this Class Action Complaint, and the exact number and identities of members of the Class will be ascertained through discovery.

[3].   The Minnesota Supreme Court in a May 22, 2015 Order assigned all cases filed in Minnesota state courts against Syngenta to a single judge, the Honorable Thomas M. Sipkins of the Fourth Judicial District, under Minn. R. Gen. P. 113.03. Judge Sipkins consolidated the Syngenta cases into two lead files: *In re: Syngenta Class Action Litigation: Class Action*, No. 27-cv-15-12625; and *In re: Syngenta Class Action Litigation: Individual Claims*, No. 27-cv-15-3785. Upon information and belief, there are about 23,000 Minnesota corn growers who are members of the Minnesota class action, and about 60,000 growers across the United States, including 9000 Minnesota growers, who filed individual claims. Judge Sipkins announced that he was retiring and by July 7, 2017 Order the Minnesota Supreme Court assigned the Syngenta cases to the Honorable Laurie J. Miller of the Fourth Judicial District.

claims asserted on behalf of a nationwide class, filed under Rule 23 of the Federal Rules

of Civil Procedure; there are some 60,000 proposed Class members; the aggregate

amount in controversy exceeds the jurisdictional amount of $5,000,000.00; and

Defendants are citizens of States different from that of named Plaintiffs and members of

the Class. The Court has supplemental jurisdiction over the state law claims pursuant to

28 U.S.C. § 1367.

53.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 18 U.S.C.

§ 1965, because Defendants implemented and pursued their massive attorney fee fraud

scheme by filing some 60,000 individual lawsuits in Minnesota state courts and

consolidated in Hennepin County District Court.

## CHOICE OF LAW AND FORUM

54.     Farmers address Defendants' misconduct through federal and Minnesota

law that apply to all Farmers. Defendants misused the Minnesota courts to file their

60,000 individual lawsuits against Syngenta in furtherance of their "mass tort …

individual suit" attorney fee fraud scheme. The secret Joint Prosecution Agreements

excluding Defendants' 60,000 individual clients from class action proceedings in the

federal MDL and Minnesota were employed by Defendants in the MDL and Minnesota

courts in furtherance of that scheme. Defendants misled the MDL and Minnesota courts

to believe that Defendants had complied with their fiduciary and ethical obligations to

gain informed consent from individual Farmers for exclusion from the MDL and

Minnesota class certification proceedings and notice and opt-out procedures.

Accordingly, Minnesota has a connection to the claims of each Farmer and Class

Member, and no state has a greater interest than Minnesota in having its law apply to this

case. It is well-settled that "a forum state may apply its own substantive law to the claims

of a nationwide class without violating the federal procedural due process clause or full

faith and credit clause if the state has a "significant contact or significant aggregation of

contacts" to the claims of each class member such that application of the forum law is

"not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985).

     55.    Defendants' early contracts with Farmers did not contain a choice of law

and forum provision. **Exhibit 1** (Bromley) and **Exhibit 2** (www.lostcornincome.com

4/5/18: "NO CASES WILL BE ACCEPTED EFFECTIVE 9/1/17). Although some later

contracts assert that Texas law and a Texas forum apply to contract disputes, **Exhibit 3**

(Kellogg: May 11 and May 24, 2015), there was no consideration for Farmers to sign the

later contracts. The Texas law and forum language would not apply, in any event, to

Farmers' claims of attorney misconduct presented in this case.

     56.    The American Bar Association (ABA) Model Rules of Professional

Conduct Rule 8.5(a) and (b) (2007) provide (emphasis added):

> (a) Disciplinary Authority. A lawyer admitted to practice in this
> jurisdiction is subject to the disciplinary authority of this jurisdiction
> regardless of where the lawyer's conduct occurs. A lawyer not admitted in
> this jurisdiction is also subject to the disciplinary authority of this
> jurisdiction if the lawyer provides or offers to provide any legal services in

this jurisdiction.  A lawyer may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction for the same conduct.
(b) Choice of Law.  In any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied shall be as follows:
(1)  for *conduct in connection with a matter pending before a tribunal*, the *rules of the jurisdiction in which the tribunal sits*, unless the rules of the tribunal provide otherwise; * * *

57.     Because Defendants used the Minnesota courts to litigate their 60,000 individual lawsuits against Syngenta in furtherance of their "mass tort … individual suit" attorney fee fraud scheme, Defendants' misconduct is governed by the Minnesota Rules of Professional Conduct.

58.     Likewise, Minnesota has a strong public policy interest in providing the forum and enforcing its laws addressing attorney misconduct by lawyers practicing law in Minnesota, which include criminal penalties under Minn. Stat. §§ 481.071 and 481.07 and Minn. Stat. § 325F.67.

59.     Defendants' misconduct therefore falls under the governance of Minnesota statutory laws such as the Prevention Of Consumer Fraud Act, Minn. Stat. §§ 325F.68-70, False Statement In Advertising Act, Minn. Stat. § 325F.67, Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-48, and Misconduct by Attorneys/Penalties for Deceit or Collusion, Minn. Stat. §§ 481.071 and 481.07, and common law claims of breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, fraudulent inducement, fraudulent execution, aiding and abetting breach of fiduciary obligations and fraud, and civil conspiracy.

21

## FACTS

**A.     Class Actions With Common Damages Like The Syngenta Litigation**

60.     In multi-state and national class actions with common facts and a common damage, the earlier a case is filed, the larger and more experienced the law firm doing the filing, and the more potential class members held by that firm, the more likely that law firm will be assigned a role on the lead counsel committee in consolidated litigation. It is the lead counsel committee in a class action who conduct documentary discovery, establish document depositories, take depositions, brief and argue motions, conduct bellwether trials, and in general, carry out the court's pretrial orders, including appearances at periodic conferences or hearings. Lawyers with clients who are not selected for a leadership role are basically left to assist their clients in filing claims in the event of a resolution of the litigation. If the clients choose to opt-out of the class action proceedings or settlement, the lawyers for those clients are required to pay the lead counsel of the class, or MDL lead counsel for consolidated mass tort cases, a so-called common benefit fee as determined by the Judge handling the consolidated litigation.

61.     A class action with common facts and a common damage is the most efficient way to handle hundreds or thousands of claims.  *See* Fed. R. Civ. P. 23; Minn. R. Civ. P. 23; *The Federal Class Action Practice Manual*; *MDL Standards And Best Practices*, Duke Law Center For Judicial Studies, Sept. 11, 2014. The work is handled by the assigned lead counsel and committee, with those lawyers getting a percentage of the

common fund upon successful resolution of the case. The assigned judge for the class

action is a fiduciary for the class, determining an appropriate fee award after motion

practice, with input from all parties, plaintiff and defendant, as a percentage of the

common fund.

62.     The Syngenta GMO litigation is a classic example of a case suited for class

action treatment. The facts and issues are common to the class; that is, the alleged

improper marketing by Syngenta, pushing its GMO seed into the United States market for

growers when Syngenta reasonably should have anticipated that China might not grant

approval for seed with the GMO MIR162 trait to enter the country.

63.     Defendants' own advertising solicitations to corn growers throughout the

Midwest announced a common price drop, a common cent-per-bushel damage, for every

grower selling corn into the market throughout the United States. As disclosed in

Defendants' advertisements and solicitations and class certification pleadings in the MDL

and Minnesota litigation, plaintiff experts opined that China's rejection of the Syngenta

seed caused an estimated .22 cents to over $1 per bushel" price drop in the elevator price

for corn, in 2015, in every market across the United States. Two experts opined in the

MDL bellwether trial for Kansas corn growers that Syngenta's conduct, taking into

account modest transportation and delivery variables, caused a damage of 48.69 cents a

bushel and 40.90 cents a bushel for growers across the United States over a five year

period from 2013-18. Using the lower calculation for this discussion, a corn grower who

23

sold his corn in North Dakota suffered an alleged 40.90 cents per bushel price drop. A grower who sold his corn in Arkansas had the same essential 40.90 cents per bushel price drop. A grower in Kansas faced a 40.90 cents drop and a grower in Illinois faced the same 40.90 cents per bushel price drop.

**B.    Defendants Exploit The "Mass-Tort … Individual Suit" Model For Individualized Injuries And Damages In Product Liability Litigation**

64.    The "mass-tort … individual suit" model is exploited by Defendants to lure corn growers into their 40 percent contingent attorney fee scheme. A "mass-tort …individual suit" model is the type of litigation applied to drug and medical product device claims – pharmaceuticals and dangerous medical devices – where there is an individualized injury. A recipient of a defective weight loss drug, or a defective artificial hip implant, may suffer an individualized injury that differs significantly from someone else who purchased the same product.  Individualized injuries, individualized damages.

65.    An August 19, 2016 solicitation by the National Trial Lawyer to attend a mass tort conference highlights the types of defective drug and product claims that earn the mass tort moniker with individualized physical injuries:

- New Pradaxa docket in Connecticut
- IVC Filter Latest Developments
- Xareito MDL and Philadelphia Court of Common Please Update
- Fluoroquinolone antibiotics emerging litigation information
- Emerging Roundup litigation

66.    The National Trial Lawyer mass tort conference did not discuss the Syngenta litigation for a reason understood by all mass tort lawyers. Simply stated, the

Syngenta case is not a "mass tort … individual suit" case. Defendants exploited the "mass-tort … individual suit" model as a means of justifying their attempts to lure uninformed corn growers to file individual suits, and thereby avoid the class action common fund model, with attorney fees subject to the fiduciary control of the court as a percentage of the common fund.

**C.      Litigation Race Was On:  Federal MDL In Kansas**

67.      On September 12, 2014, Cargill filed the first lawsuit against Syngenta for improper marketing of its GMO corn seeds. Corn exporter Transcostal Supply Company filed suit four days after Cargill.  By October 2nd, five statewide class actions had been filed against Syngenta; by October 18, eleven statewide class actions had been filed. Archer Daniels Midland Company ("ADM") filed suit on November 19, 2014.  By December 1, 2014, hundreds of corn growers had filed suit against Syngenta.

68.      The plaintiffs in an action filed in the Northern District of Illinois brought a motion under 28 U.S.C. § 1407 to centralize all pretrial proceedings in the Northern District of Illinois. Although no party opposed centralization, Syngenta suggested that the litigation be centralized in the District of Minnesota.

69.      The United States Panel on Multidistrict Litigation ("MDL") held a hearing in Charleston, South Carolina on December 4th. In a December 11, 2014 Order, MDL No. 2591, the Panel issued a Transfer Order centralizing the federal court litigation by corn growers against Syngenta in the District of Kansas, ruling that the numerous claims filed

in federal court shared common issues of law and fact and should be consolidated for

pretrial and discovery purposes, and assigning the Honorable Judge John W. Lungstrom

to handle the proceedings. The MDL noted that one action and three tag-along actions

were already pending in the District of Kansas. The MDL also noted that a total of 168

potentially related "tag-along" actions by corn growers against Syngenta had been filed in

various federal district courts after the initial motion for consolidation by the plaintiffs in

the Northern District of Illinois.

70.     Defendants avoided the federal courts, knowing that any lawsuits filed in

federal court would be consolidated into the MDL. Defendants employed the Minnesota

state courts for their scheme, because one of the four Syngenta entities in the United

States, Syngenta Seeds, Inc., had its headquarters in Minnesota. And Defendants never

told Farmers, a fraud of omission, that the consolidated proceedings in federal court in

Kansas included complaints filed as putative class actions, covering corn growers in

states across the United States, including Iowa, Illinois, Nebraska, Minnesota, Indiana,

South Dakota, Kansas, Wisconsin, Missouri, Ohio, and North Dakota, and etc.

71.     Instead, Defendants commenced and implemented their scheme through

false advertising to persuade corn growers throughout the United States to sign retainer

agreements authorizing individual lawsuits against Syngenta with a 40 percent contingent

attorney fee from any recovery.  Farmers were dishonestly told in a barrage of

advertisements and community meetings that a "*mass tort ... individual suit*" is better

than a class action. Farmers were dishonestly told that "*only those who sign up (with Defendants) are eligible to pursue claims*."

**D.      Town Hall Meetings, Direct Mail Solicitations, Websites, Media Interviews, Joint Venture Relationships**

72.     On December 4, 2014, the same day that the federal MDL panel met in Charleston, South Carolina to consider transferring all federal cases to a single district court, and just a week before the December 11, 2014 MDL Order transferring all federal cases to the District Court in Kansas, Defendants began town hall meetings across the Corn Belt to solicit corn growers to pursue their "mass tort …individual suit" scheme with a 40 percent contingent attorney fee.

73.     Defendants also initiated a barrage of websites such as 3DollarCorn.com, CornFarmerLawsuit.com, CornSuits.com, IndianaCornLawsuits.com, IowaCornLawsuit.com, KansasLostCorn.com, LostCornIncome.com, MidwestCornLawsuit.com, NebraskaLostCorn.com, NorthDakotaLostCorn.com and others, touting their "mass tort … individual suit" scheme.

74.     Defendants used farm media advertisements in weekly agricultural industry newspapers and Facebook posts to drive farmers to websites and town hall meetings: "*Sign Up On-Line in 3 Minutes!*"; "*Sign Up before Spring Plant!*"; "*Last chance before Spring Plant!*"; "*Over 13,000 Farmers Strong & Growing!*"; "*We represent over 20,000 Farmers in 44 States in America with local lawyers to serve you! … This is time sensitive – Statute of Limitations vary by state*.".

27

75.     Defendants engaged select lawyers and law firms as "joint venture partners" to assist in conducting the town hall meetings and soliciting corn growers as clients, with the joint venture partners sharing in the 40 percent contingent fee.

76.     Defendants falsely represented to corn growers through direct mail and advertisements and town hall meetings that if they did not sign with Defendants, the growers would lose their right to file a claim. Defendants also gave numerous press interviews.

77.     The goal was to deceptively tout Defendants' "mass tort … individual suit" scheme as superior to class actions where "lawyers get all the money" and corn growers only get a gift certificate and discounts for seed corn, and thereby mislead growers into signing Defendants' 40 percent contingent fee retainer contract.

78.     For example, through LostCornIncome.com and community meetings and direct mailings, defendants Watts Guerra, LLP and joint venture partners, Daniel M. Homolka, P.A., and Hovland and Rasmus, PLLC, aggressively solicited corn growers in Minnesota, North Dakota and South Dakota and other states.

79.     In December, 2014 meetings with corn growers throughout Minnesota, Watts was quoted by local media as saying that the "40 percent … fee structure is standard for this type of litigation."  This is a statement intended to deceive growers and a fraud by omission. A forty percent fee is an unreasonable fee for a class action or any case of aggregate claims with a huge common fund like Syngenta.

28

80.     In a January 16, 2015 meeting with corn growers, quoted in Agweek, a farm publication disseminated in Minnesota, North Dakota, South Dakota and Montana, and placed on LostCornIncome.com, Defendant James B. Hovland, under the direction and control of the Watts Guerra group, was quoted as saying:

> Hovland and his colleagues prefer a mass tort case because it would involve more individual firms and corn farmer clients would be handled more individually.  He says class action suits can end in getting a 'free bag of seed or some (sale) credit,' while a mass tort can provide 'better recovery for the farmers.'

81.     In a January 17, 2015 meeting, quoted in the Mankato Free Press with the article placed on the LostCornIncome.com website for wide dissemination by Defendants: "[Daniel] Homolka said that if farmers don't file a suit, which costs them nothing, they will most likely *not be included in any eventual settlement*." (Emphasis added). The statement by Homolka, on behalf of Watts Guerra, is dishonest. Putative class actions were already consolidated in the federal MDL in Kansas, covering essentially all 600,000 corn growers in the United States. Corn growers who listened to Homolka already had effective representation, counsel leading the consolidated class actions, and did not need to do anything at all. Growers certainly did not need to sign Defendants' 40 percent attorney fee retainer agreements.

82.     During a February 2, 2015 meeting of corn growers in Storm Lake, IA, defendant Watts was quoted in the Storm Lake Pilot Tribune as telling the assembled growers (emphasis added):

He told the growers that they need to sign up for his lawsuit quickly, repeating several times that the statute of limitations would run out. "There is only so much time to file suit," he said.

Some of the farmers asked about the difference between his mass suit and class action.  Under class action, Watts told them, *lawyers get all the money* and the *farmers may get a gift certificate*.

He said that those who sign on as plaintiffs in his lawsuit can *choose to opt out* if  they do not like whatever may occur, and go ahead suing individually instead.

83.     The statements by Watts are dishonest and a fraud by omission.  Watts never told the assembled group that putative class actions covering essentially all 600,000 corn growers in the United States were consolidated by a federal MDL panel in U.S. District Court in Kansas on December 11, 2014.

84.     Watts dishonestly said that in class actions lawyers get all the money and farmers get gift certificates. In fact, what Watts did not tell the corn growers, was that in class actions with a large common fund, the typical attorney fee and costs assessed from the fund, covering each claim, with the presiding Judge as a fiduciary for the class, are about 10-12 percent. Defendants' "mass tort … individual suit" scheme was intended, from the very beginning, to extract 40 percent of the claim from each grower.

85.     Finally, Watts tells the corn growers that if they sign his 40 percent attorney fee retainer, they will be informed and presented the option to opt-out of a settlement. In fact, through secret Joint Prosecution Agreements with the MDL and Minnesota class counsel, Defendants excluded the growers from the MDL and Minnesota class action

proceedings with no notice to the growers and explanation for the exclusion from class action treatment.

86.     In a February 9, 2015 town hall-styled meeting at the Fergus Falls, MN AmericInn, Homolka talked about the Watts Guerra legal actions against Syngenta. Homolka told corn growers that the advantage to filing individual lawsuits in county courts in Minnesota, where the growers resided, was "a significant advantage" over participating in the class action process in the federal MDL in Kansas. Homolka never explained that the true motivation by Defendants was to sign growers to 40 percent contingent attorney fee agreements, and avoid losing control of the litigation to lead counsel in the Kansas MDL, while collecting an unreasonable 40 percent of each claim in the event of an ultimate settlement.

87.     A flyer mailed to growers in early March, 2015, stated: "Join us next week for a Town Hall Meeting in your area to find out how to recover your loss. *Only those who sign up are eligible to pursue claims."* (Emphasis added). The flyer does not say, a fraud of omission, that the federal MDL had consolidated putative class actions in the District of Kansas in December, 2014, three months earlier, with claims specifically asserting Minnesota, North Dakota and South Dakota law and covering corn growers in those states.

88.     The 3DollarCorn.com website had a question and answer section where Defendants state:

31

> "We are MDL (Multi-District Litigation) Mass Tort lawyers vs. Class
> Action lawyers that represent you (as part of the class) without you
> knowing it. They simply file paper work on behalf of the farmer "Class."
> Class Action cases are often settled without the knowledge of the clients
> under terms that seem to work best for the lawyers who bill the case by the
> hour.  Many of these settlements result in clients being offered coupons or
> pre-paid debit cards in the case of Star-link Settlement. We feel there is a
> better way."

89.     The statement is misleading. It implies that class actions are unfair to the

clients and only result in coupon settlements. It purports to compare a different case, with

different facts, to the Syngenta litigation.  It does not inform the consumer that in class

actions, attorney fees as a percentage of the common fund, must be approved by the

presiding Judge, as a fiduciary for the class.  It does not inform corn growers that with

individual lawsuits, there is no Judge approving fees or looking out for the best interest of

the client.

90.     In another section of the website, a purported news section, Defendants

proclaim:

> "The lawsuit would not be a class action. Rather, farmers would file
> individual suits and these cases would then be consolidated into a single
> civil action, known as a mass tort. A small number of individual cases,
> considered to be representative of the larger pool of plaintiffs would be
> selected to potentially go to trial, but odds are slim that any single farmer
> would be deposed to participate, lawyers said."

91.     The statement is misleading. Defendants misrepresent the nature of

consolidated individual claims as opposed to a class action. The statement misrepresents

the risk to individual corn growers, who may incur time answering written discovery

32

requests and costs and be required to testify by deposition and at trial. It does not say that

with a putative class action underway in federal court in Kansas, growers need not do

anything, and need only wait to submit claims if there is a settlement or judgment in the

federal class action. With a class action, there is no risk that any growers, other than class

representatives, will be deposed or incur costs or be required to testify at a deposition or

trial. In fact, Defendants dismissed individual growers who were selected for bell weather

trials and did not want to participate.

92.     The 3DollarCorn.com website states:

> "Farmers participating in the lawsuit would pay a contingent fee equal to 40
> percent of any judgment awarded, according to Watts. That 40 percent
> would get divided among the lawyers involved, including local lawyers.
> Farmers would take the 60 percent and would pay nothing in fees if their
> lawsuit is unsuccessful, according to Watts. He said the fee structure was
> standard for this type of litigation."

93.     The statement is misleading and a fraud of omission. Defendants do not

inform corn growers that putative class actions on behalf of the solicited growers had

already been filed and consolidated in the federal MDL in Kansas. The claim that the "40

percent … fee structure was standard for this type of litigation" is misleading and an

effort to extract an unreasonable fee. The standard fee for class action litigation is

determined by the Court, as a fiduciary for the class members, and a typical common

fund fee assessment with huge common funds, like this Syngenta litigation, may likely be

around 10-12 percent.

94.     The website states:

"This lawsuit is not a class-action case but rather a "mass tort" in which farmers file individual suits. But the cases are consolidated into a single civil action. Mass torts attempt to reduce the number of court cases by taking to court a small number of cases considered to be representative of a larger pool of plaintiffs. … In this case most of the cases are being consolidated in the federal court in Kansas with one judge overseeing it. … But Homolka's group is fighting to keep the Minnesota cases consolidated in Minnesota. He (Homolka) argues that because Syngenta's North American headquarters is based in Minnesota, his clients have a legal right to have their cases handled in Minnesota courts. .... *Homolka said that if farmers don't file suit, which costs them nothing, they will most likely not be included in any eventual settlement*. He and his team have been holding town hall meetings around the state to tell farmers about the case."

95.     The statements are misleading. The statements imply that the Syngenta claims are a mass tort and not appropriate for class action treatment, which is false. The statements imply that a "mass tort" is superior to a class action, which is false. The statements imply that a "mass tort" is in the best interest of the corn growers, which is false. The claim that if growers don't sign up with Homolka and Watts, they will lose their claims, when putative class actions are consolidated in the federal MDL covering all of the growers in corn growing states, is false.

96.     The website states: "Our contingency fee arrangement calls for a 60-40 split in the event of a settlement, a standard fee in major litigation." This is a misleading statement and an effort to extract an unreasonable fee from uninformed clients.

97.     The website suggests that the Watts Guerra group is doing corn growers a favor by agreeing to pay for costs out of the 40 percent contingent fee. This is disingenuous, a fraud of omission. The website does not inform growers that a 40 percent

34

contingent fee is an unreasonable fee in huge common fund cases.

98.     In a question and answer section of the website is the following (emphasis added):

> "Q.     How much does it cost?
>
> A.     The agreement between parties is a contingency fee agreement. It means YOU PAY NOTHING unless we secure a recovery for you. When we do, it is split 60% (farmer) – 40% (lawyer) … you know exactly what you are getting. … We do not believe that enticing clients with low percentage deals (25-33% fees) than (sic) charging after the fact for fees out of their control is the right way to do things. The law allows firms to charge *up to 49.9%* once expenses are included.  Often in the end a 66% -- 33% deal becomes a 51-49% deal.

99.     The statement is intended to deceive corn growers, through misrepresentations and omissions. The statement says nothing about the fact that in class actions, cases with common facts and law and a common per bushel damage like Syngenta litigation, the fees are determined by the presiding Judge as fiduciary for the class. The statement implies that lawyers who charge 1/3 or less are somehow unethical and not providing full disclosure. The statement implies that corn growers could be charged as much as 49.9 percent of a claim recovery, and this is clearly unreasonable and inconceivable for litigation like Syngenta with common facts and law and huge common fund claim. Ironically, Defendants were looking in the mirror – a very dark mirror. Through their "mass tort … individual suit" attorney fee fraud scheme, Defendants will now attempt to extract a 46-54 percent attorney fee from each individual Farmer.

35

100.    Through 3DollarCorn.com and NorthDakotaLostCorn.com and other

coordinated websites, and community meetings and direct mailings, Watts Guerra and

joint venture partners aggressively solicited corn growers in 2014 and 2015 and into

2017, in North Dakota, South Dakota, Nebraska and other states.

101.    In an August 17, 2015 advertisement in Agweek, the Watts Guerra group

boasted, like all its websites, that it had been appointed lead counsel for its Minnesota

lawsuits (emphasis in original and added):

> As of Friday, we represent *22,500 farmers* and filed *92% of ALL CASES
> in the U.S.* We thank (sic) for joining our team.
>              …..
> In order to collect damages, Corn Growers, Elevators & Grain Traders need
> to … sign up.

102.    Defendants do not explain that there is a pending class action in the federal

MDL in Kansas covering essentially all 600,000 corn growers. The 22,500 individual

cases filed by the Watts group, the 40 percent contingent fee "mass tort … individual

suit" scheme, are less than four percent of United States corn growers.

103.    Also, Defendants use the advertisement to scare corn growers that "*to

collect damages"* they must sign Defendants' retainer agreement and pursue individual

lawsuits.  This statement, alone, is false and a fraud of omission.  Corn growers are never

informed that they are members of the putative class action in the federal MDL

proceeding in Kansas.

104.    In similar October 5, October 19, October 26, November 2 and November 9

media advertisements in Agweek, Defendants state: "There is No Cost & No Risk to you but *you must sign up to file your claim!*" (Emphasis added). The statements are dishonest and a fraud of omission because, of course, all 600,000 corn growers are members of the putative class action underway in the federal MDL proceeding in Kansas. There is no requirement that any grower sign up with the Watts Guerra group to pursue a claim. Class members can simply wait until there is a settlement and submit a claim to the Claim Administration Firm approved by the presiding court, as a fiduciary for the class.

105.    In a direct mail solicitation letter sent to corn growers throughout the Midwest in the summer of 2016, Defendant Dewald Deaver stated (emphasis added).

> We are filing individual claims for farmers (referred to as mass tort actions) rather than class action lawsuits. We anticipate that the attorneys filing the class action lawsuits will request the Court to certify their class by this Fall. If the class action lawsuits are certified by the Court, the Court may bar the filing of additional individual mass tort claims. *The only way to ensure that you will be able to file an individual mass tort claim is to sign up before the class action lawsuits become certified.* We would encourage you to review these materials, call us with any questions, and sign up before it is too late."

106.    The statement acknowledges that all individual lawsuits will become part of the federal MDL and Minnesota class in the event of class certification, and thereby overseen by the presiding courts as fiduciaries for the class members. What the statement does not disclose, a fraud of omission, is that Watts Guerra and its joint venture partners have entered into secret Joint Prosecution Agreements with the class counsel that *exclude all the individual lawsuits* filed by the Watts Guerra group and its joint venture partners, with 40 percent contingent free retainer agreements, from class membership.

37

107.    In other words, the Watts group throughout 2015 and 2016 deceptively
solicited corn growers for individual lawsuits, knowing that they had already excluded
growers who replied to their solicitations and signed 40 percent contingent fee retainer
contracts, from the federal MDL and Minnesota class actions with judicial oversight over
fee awards.

108.    The letter solicitation also states that there is no risk to corn growers who
sign up for a 40 percent retainer:  "We will **NOT** take any costs out of your 60% share.
This is far different from the class action route and far different than other contracts that
charge the farmer all or most of the costs of the lawsuit." This statement is a fraud by
omission because it does not disclose that for corn growers in a class action, with perhaps
600,000 class members like the Syngenta case, the costs assessed as part of the common
fund for class counsel are minimal. The statement is misleading because it suggests
growers are getting a great deal with a 40 percent contingent fee, when in fact they are
being scammed, with attorney fees in the class action likely to be assessed at no more
than 10-12 percent of the common fund; that is, 10-12 percent of each grower's claim.

109.    The 3DollarCorn.com website has an article, authored by Watts, stating:

> "Mass Action vs. Class Action Lawsuits …. Currently, many law firms are
> seeking class action lawsuits against Syngenta. Unfortunately, class action
> cases usually result in outrageous fees for the attorneys pursuing them,
> while farmers and those directly impacted by Syngenta's actions will only
> receive a nominal award. Unlike a class action suit, a mass action lawsuit
> can give farmers the representation and compensation they deserve,
> ensuring compensation is awarded based on actual damages as a result of
> Syngenta's commercialization of unapproved traits. Unlike a class action

suit, a mass action will not be settled without your decision to opt-in to the
proposed settlement.

110.    The claim that class actions result in "outrageous" attorney fees is
untruthful. In class actions, attorney fee awards are approved by the presiding Judge as a
fiduciary for the class, after notice and a right by class members to object to the proposed
fee award.

111.    In a July 5, 2015 post on the website Watts purports to inform prospective
clients why most lawsuits against Syngenta are filed in Minnesota state courts, rather than
in federal courts. Watts asserts that cases proceed faster in Minnesota, and trial rules are
more favorable to plaintiffs. Whether or not this is true, Watts never acknowledges that
his law firm had signed a secret Joint Prosecution Agreement with the federal MDL class
counsel and Minnesota class counsel to exclude the 60,000 Watts Guerra clients as
members of certified classes.

112.    In a July 5, 2015 post, Watts authored an article explaining why his "mass
action" individual lawsuit method is superior to a class action. Says Watts (emphasis
added):

> The basic difference between class action cases and mass action cases is
> that the rules are different. Class actions may be initiated by an out-of-state
> lawyer having only one client (or only just a few), who will file suit on
> behalf of every corn farmer in the state – even though that lawyer will
> never even ask you whether you want to be represented. Instead, a class
> action lawyer need only have his or her case certified as a class action.
>
> Once certified, the class counsel may negotiate a settlement with the
> Defendant, and may do so without your written permission. Instead, they

39

need merely to give  written public notice as ordered by the Court, usually on three occasions. As the joke goes, this class notice is often placed on page D-27 of the paper – in between the funeral pronouncements and the funny pages where no one is looking – with print so small that if class members don't have their magnifying glasses with them, they will never know that they need to object in order to stop the settlement.

Some past class actions have been criticized when lawyers receive millions of dollars in fees, while the "clients" receive only coupons. Stories are legion of class members, who had no real idea previously that a lawsuit had been filed on their behalf, opening their mail to find a letter informing them that "their case had been settled," and that if they fill out a form, they are eligible to recover $3.38 cents, or mere pocket change. Fine print in the notice also points out that the lawyers will be paid millions of dollars. In the past, coupons have been offered for future purchases from the Defendant that both sides know will never be redeemed; nevertheless, these coupons have served as the basis for the "value" of the settlement, upon which huge attorneys' fees are calculated. Of course, the obvious critical critique of this situation is that the *financial interests of the attorney have deviated from those of his class clients*. As such, some have argued that allowing the individual plaintiffs to pursue their claims with lawyers they have chosen themselves, and agreed to compensate based on a contingency fee – where the lawyer gets paid only a percentage of the actual dollars recovered by the plaintiff – is the superior way to go.

113.   The statement is dishonest and a fraud of omission. Watts does not tell the

corn growers that his 40 percent contingent fee contracts greatly exceed the fees that may

be assessed by the Judge in the MDL class action proceedings, as a fiduciary for the

class. Watts does not tell his prospective clients that his firm has signed a secret Joint

Prosecution Agreement to exclude clients who sign his 40 percent retainers from class

treatment without their knowledge.

114.   In a July 5, 2015 post Watts states:

[A]t the very beginning, the client should ask, "What percentage of my

40

> recovery will I have to pay for legal fees and expenses?" The standard
> contingency fee is 40% of the recovery, but some lawyers require the
> farmer to repay the litigation expenses out of the client's share of the
> recovery. What seems like a 60-40 deal,  becomes something much worse
> than that for the client, as the client's share is eaten away by the repayment
> of significant litigation expenses. In our contracts, we make clear that the
> client is guaranteed a sixty-percent (60%) of the total recovery, with
> expenses being repaid from our 40% of the total recovery.

115.    The statement is misleading and a fraud of omission. The expenses of a

class action with 600,000 claimants, in the context of a huge common fund, are not

significant, and must be approved by a Judge presiding over a class action, as a fiduciary

for the class. Watts leads unsuspecting growers to believe they are getting a great deal,

when he is luring them into an unconscionable 40 percent fee agreement, when they

could have no risk and only pay perhaps 10-12 percent of their claim for fees in the MDL

class action. Watts is the massage therapist who stealthily lifts the client's wallet while

giving the massage.

116.    A July 5, 2015 post by Watts discusses when Syngenta cases will settle and

how this relates to Statute of Limitation concerns:

> U.S. corn farmers must file their cases against Syngenta before their
> particular state's statute of limitations distinguishes unfiled claims. … it
> will be in Syngenta's best interest to wait until the statute of limitations in
> major corn producing states have expired (to settle).  … There are over
> 440,000 corn farmers in the United States, growing corn on more than 88
> million acres of farmland. Every statute of limitation that expires means
> that Syngenta will not have to pay the farmers who have failed to timely
> file their claims. Consequently, defendants in major mass tort litigations
> typically wait until the statute of limitations in major states have expired so
> that they may put a fence around their total liability, …

117.    A July 5, 2015 post on 3DollarCorn.com by Watts states in bold: "**If the suit is not filed by the time the statute of limitations runs, the lawsuit may not be brought at all**." Watts then explains that twenty states produce almost 99% of the corn grown in the United States, and Watts discussed the various state statutes of limitation that may apply, including one, two and three-year limitations. Another July 5, 2015 post by Watts states in bold: "**It is anticipated that before the various corn producing states' statutes of limitations extinguish untimely claims, more than 100,000 farmers, landlords and grain elevators will have filed timely suit against Syngenta**."

118.    The statements are intended by Watts to scare corn growers into quickly signing up, online, to be a Watts Guerra client. Watts does not inform prospective clients that a class action against Syngenta is underway in the MDL in Kansas, with claims in the master complaint covering essentially all 600,000 growers in the United States. In *American Pipe and Construction Company v. Utah*, 414 U.S. 538 (1974), the Supreme Court held that the statute of limitations on a claim is generally tolled for members of the putative class from the filing of the class action complaint until the denial of class certification, so Watt's professed concern over state statutes of limitation as an exhortation to sign up with Watts Guerra and its joint venture partners, at a 40 percent contingent fee, is misleading and a fraud of omission.

119.    An August 5, 2015 post proclaims that "The Watts Guerra Team of Attorneys Are LEAD COUNSEL."  The post claims that the Minnesota state court

oversees "90 percent of the claims in the nation" when in fact the opposite is true.

Although 90 percent of the individual lawsuits against Syngenta were filed in Minnesota

by Defendants, these 60,000 lawsuits are only 10 percent of the 600,000 corn growers in

the United States, all covered under the federal MDL in Kansas and a Minnesota class

action for Minnesota residents.

120.    A September 4, 2015 website post, purports to explain why "mass action"

suits are superior to "class action" suits:

- Class Actions May be initiated by an Out-of-State Lawyer Having Only One Client (or Only Just a Few), who will file Suit on Behalf of Every Corn Grower in the State – Even Though That Lawyer will  Never Ask you Whether You Want to be Represented.
- Class Action Lawyers May Settle Your Case Without Your Written Permission; Instead, They Need Merely to Give Written Public Notice on Three Occasions.
- Some Past Class Actions Have Been Criticized When Lawyers Receive Millions of Dollars in Fees, While the "Clients" Receive Only Coupons.
- Based on Precedent in the GMO Rice case, if the class action is not certified, thousands of individual farmers with their own lawyers will then be free to pursue their claims against Syngenta.

121.    The statement is misleading and a fraud by omission.  It misinforms corn

growers about the procedural operation of a class action, suggesting that growers who do

not file claims have no choice as to whether or not they have the right to participate in the

class, assuming it is certified, through opt-out procedures.

122.    The statement that class action lawyers may settle a case without

permission is misleading. A settlement occurs only after class notice with a right to

object, and approval by the presiding Judge, a fiduciary for the absent class member, who

makes a determination about the reasonableness of the settlement.

123.   The criticism of class actions, suggesting they are a cash cow for lawyers with clients receiving only coupons, is misleading. The irony is that Defendants are running a massive fraud scheme against United States' corn growers, an attempt to exploit growers for a 40 percent attorney fee, while never informing growers that a reasonable fee in a class action settlement with a common fund exceeding $1 billion may be no more than 10-12 percent of the common fund.

124.   An August 31, 2015 post on 3DollarCorn.com discusses the need to keep corn growers informed: "How Will We Keep You Informed of What Is Going On With Your Syngenta GMO Corn Lawsuit? The post is untruthful and a fraud by omission. Defendants never informed growers that they were effectively represented by class counsel in the consolidated federal MDL class action in Kansas. Nor were growers who had signed Defendants' 40 percent contingent fee retainers informed of Defendants' decision to exclude all 60,000 of their individual clients from the federal MDL and Minnesota class actions.

125.   An August 31 post discusses Defendants' process for keeping corn growers informed, through status updates and documents loaded onto its solicitation websites like LostCornIncome.com and 3DollarCorn.com. And yet, Defendants never discussed nor loaded the secret Joint Prosecution Agreements onto its websites; the secret agreements with class counsel in the federal MDL filed under seal, automatically excluding

Defendants' clients from the class proceedings and agreeing to pay 5.5 percent of an individual grower claim recovery as a contribution for a common fund fee and costs assessment to MDL class counsel and 5.5 percent to Minnesota class counsel.

126. An August 31, 2015 post by Watts purports to answer the question: "When Will the GMO Corn Lawsuits Against Syngenta Be Settled? The post exhorts prospective clients who have not yet signed retainer agreements with the Watts Guerra group, that statutes of limitation may run against growers, preventing their claims: "U.S. corn growers must file their cases against Syngenta before their particular state's statute of limitations distinguishes unfiled claims." This scare tactic is dishonest and a fraud by omission. The pending class actions in the federal MDL in Kansas covered all 600,000 U.S. corn growers and there was no reasonable basis for a concern that statutes of limitation would prevent the filing of claims against Syngenta. The post also asserts that Syngenta is waiting for the statutes of limitation to run in corn growing states to limit the pool of prospective claimants. This is dishonest. The class actions already cover all 600,000 corn growers, and Syngenta, like Watts Guerra and its joint venture partners, know this. Of course, the growers don't know this, so Watts attempts, in August of 2015, nine months after class actions covering United States corn growers were consolidated in the federal MDL in Kansas, to play the statutes of limitation as a scare card to lure more growers into his attorney fee fraud scheme.

127. An August 31, 2015 post by Watts boasts that 90 percent of the Syngenta

lawsuits have been filed in Minnesota and the Watts Guerra firm is lead counsel for that

group:

> Over 90% of the Syngenta claims in the nation were filed in state court in
> Minnesota, and 10% of the claims have been filed in federal court in
> Kansas City, Kansas.

128.    This boast is misleading and a fraud by omission. Although 90 percent of

the individual lawsuits against Syngenta were filed in Minnesota by Defendants, these

60,000 lawsuits are only 10 percent of the 600,000 corn growers in the United States, all

covered under the federal MDL in Kansas and a Minnesota class action for Minnesota

residents.

129.    A September 4, 2015 post expounds on how Watts Guerra has kept corn

growers informed, boasting that "we have given numerous press interviews and posted

many information articles on the internet in an effort to fully inform corn growers of their

rights … ." Defendants do not inform the solicited growers that they are putative

members of the MDL and Minnesota class actions. Defendants do not inform growers

that class action counsel in the federal MDL in Kansas have the lead role in litigating

growers' claims. Defendants do not inform growers that a common fund fee assessment,

in the event of a recovery by settlement, may be perhaps 10-12 percent of the common

fund, whereas Defendants exploit growers for a 40 percent contingent fee. Defendants do

not inform growers that they excluded all 60,000 of their clients from the class actions in

the federal MDL and Minnesota, so that Defendants can attempt to collect a 40 percent

46

contingent fee from each individual claim, without the oversight of the courts.

130.   A September 4, 2015 post purports to answer the question as to why so many corn growers hired the Watts Guerra group: "How Did So Many Farmers Hire Your Law Firm to File Their GMO Corn Lawsuit Against Syngenta? The suggestion in the response is that Watts Guerra and its joint venture partners are knowledgeable and superior lawyers. What the post disingenuously does not explain, is that Watts Guerra and its joint venture partners have blanketed the media and conducted hundreds of meetings across the corn belt, through the implementation of a massive attorney fee fraud scheme. The intent was to target corn growers, who were already members of a putative federal MDL class action in Kansas, by soliciting growers to a "mass tort … individual suit" fraud scheme, with growers dishonestly told that "only those who sign up (with Defendants) are eligible to pursue claims."

131.   A September 11, 2015 post on 3DollarCorn.com by Defendant Jon Givens and Givens Law, LLC, an attorney associated with Watts Guerra, LLP and a joint venture partner, boasts that the Watts Guerra group has filed 90 percent of the Syngenta claims across the United States, with the balance of the claims, 10 percent, consolidated in the federal MDL in Kansas. Givens thereby suggests that the Watts Guerra group is leading the charge against Syngenta. The Givens post does not explain that there are 600,000 corn growers in the United States effectively covered by the federal MDL class action and Minnesota class action for Minnesota residents, and the 60,000 "mass tort …

individual suits" filed by the Watts Guerra group in state courts in Minnesota are just 10 percent of the corn growers in the United States.

132.    Corn gowers were told, again and again, that a "mass tort … individual suit" is better than a class action, because class actions only recover coupons for plaintiffs. Said Bill Enyart, a member of  the Watts Guerra law firm to a meeting of growers in Champaign, Ill. on September 23, 2015, reported in The News-Gazette (emphasis added):

> Additionally, the firm is filing suits in Minnesota, where Syngenta Seeds is located, as opposed to filing in a federal court. …. Enyart said the advantage to this was that *instead of getting a discount for seed corn* in the future, *as in a class-action case*, there would be a gross settlement fee and the firm would simply send the farmer a check.

133.    The statement is misleading and a fraud of omission. There is no basis in law or fact for Watts Guerra to tell corn growers that a class action only recovers a discount for future purchases of seed corn, whereas a "mass tort … individual suit" handled by Watts Guerra puts a big check into the producer's hand.

134.    A September 30, 2015 post by Givens on 3DollarCorn.com purports to explain how prospective clients should compare retainer agreements from different law firms. Givens acknowledges that the federal MDL and the Minnesota courts have approved, as a prospective fee, an award of 11 percent – 8 percent for fees and 3 percent for costs. This sum is paid to lead counsel by any lawyer submitting a claim:

> Let's assume the facts for an example:  assume the fee agreement says the lawyer is charging his costs to your share and then charging you a 30% fee

48

based on the net (with net defined as net of court ordered or MDL fees and expenses).  In this example 11% would come out of your claim for MDL expenses leaving your net recovery of 89% of your claim. Next the lawyer takes his costs out of your claim (which will be your share of expenses the lawyer spends). Finally, the lawyer will take 30% of what remains for himself, leaving you an apple that has been bitten 3 times already. Thus what looks like a bargain of a 30% legal fee might actually be a worse deal than a 40% legal fee where the lawyer assumes all those expenses and unknown costs and risks.

135.   Defendants' hypothetical is a misleading effort to scare the prospective client into believing other firms will rip the client off, while Watts Guerra is protecting the client. In fact, if there was a two-prong settlement, as attempted by Defendants through the September 25, 2017 settlement term sheet, with a class action settlement and a separate settlement for Defendants' 60,000 individual lawsuits, members of the class may be charged 10 percent of their claim toward attorneys' fees, whereas Defendants would attempt to charge Farmers – in a Texas county court with no previous connection to the litigation – the 40 percent contingent fee set forth in the retainer contracts.

136.   With the ultimate February 26, 2018 national class action settlement as set forth in the Settlement Agreement, covering all corn growers in the United States, when Defendants submit Farmers' claims, Farmers will pay two sets of lawyers: (1) class counsel through a fee award as a percentage of the common fund; and (2) Defendants under the terms of the individual contingent fee contracts. As discussed, if class counsel are awarded 10 percent of the common fund as an attorney fee by the MDL court, individual members of the class will pay 10 percent of their claim payment for attorneys'

fees, whereas Farmers will pay a grotesque 46 percent of their claim payment for

attorneys' fees. If class counsel are awarded 30 percent of the common fund as an

attorney fee, individual members of the class will pay 30 percent of their claim payment

for fees, whereas Farmers will pay 58 percent.

137.    A September 30, 2015 post on 3DollarCorn.com purports to advise corn

growers how to choose their attorney:

- Will MDL (Multi District Litigation) expenses or other hidden fees be charged to my claim?
- Will I have an individual claim or be part of some class were I have no choice?
- Will you file my claim in a State Court like ADM and Cargill, or stick me in federal court?
- Will your expenses come out of my share?

138.    The statement is misleading and a fraud by omission. Defendants suggest

that a federal MDL proceeding has hidden expenses charged to consumer claims. In fact,

the presiding Judge in the MDL class action is a fiduciary for the class, and class counsel

must submit fee and expense applications that are approved by the Judge, with published

notice to class members. There are no "hidden" expenses. In any event, the expenses,

spread over 600,000 corn growers across the United States, are minimal and vastly

smaller than the unreasonable 40 percent attorney fee scheme by Defendants.

139.    Farmers did not have an informed "choice" when Defendants signed secret

Joint Prosecution Agreements with class counsel in the MDL and Minnesota to exclude

Farmers from the class action lawsuits, so that Defendants could pursue their attempt to

collect an unreasonable 40 percent contingent fee from each Farmer.

140.   The suggestion that corn growers should file individual claims, because major world corporations, ADM and Cargill filed individual claims, is intended to mislead growers. One cannot compare a claim by a grower with 200 acres of corn to a claim by Cargill, the largest private corporation in the world.

141.   The suggestion that it is improper for attorneys to take expenses out of the client's share is misleading. Defendants do not inform corn growers that their attempted 40 percent contingent fee will hugely exceed the fees and expenses paid by members of the class action proceedings.

142.   An October 1, 2015 post states (emphasis in original):

> **Why Would You Not Sign Up?**  At the town hall meetings, the most commonly asked question by corn producers is some version of: "Why wouldn't you sign up?"; "This is a 'no brainer' isn't it?" "Why on earth would somebody not sign up?"; or "Is there any reason to not sign up?". On occasion the question is asked with colorful adjectives  Most growers who bother to educate themselves about  filing a claim against Syngenta for wrecking the corn market price, whether by reading or attending a meeting, reach the conclusion that they should, in fact, file a claim to recover their corn price losses for 2013, 2014 and 2015 caused by Syngenta. ADM and Cargill filed claims against Syngenta for wrecking the corn market. Farmers, who look into how they can recover their losses, frequently decide to make the same decision as ADM and Cargill and file a claim. Additionally many elevators and co-ops have made the no-risk decision to file a claim. As of September 15, 2015, the Watts Guerra LLP firm represents over 30,000 corn growers and around 4,000 of those corn growers live in Nebraska. Tens of thousands of farmers have decided to hire our firm on a contingency fee basis. This means if there is no recovery, there is no fee owed to our firm, Watts Guerra LLP and their local Nebraska co-counsel are not owed anything by  growers unless a recovery is made for the grower. If nothing is recovered for a particular farmer then

that client owes the firm nothing, not one dime.  However, there is real upside potential. …

143.   The statement is misleading and a fraud by omission. The statement does not honestly advise corn growers that, with class actions pending in a federal MDL and Minnesota, they do not need to do anything, and thereby incur no risk. The statement does not disclose that growers will be charged grotesquely higher fees than those growers who did not retain Defendants.

144.   A July 1, 2016 **Update of Claim Status** by Watts on 3DollarCorn.com acknowledges, for the first time:

> "There is a motion in the Federal case to certify a class. This motion was filed June 15, 2016. We are not doing a class action but filing individual claims, as we don't want another Starlink matter. We represent over 50,000 growers who have elected to not be in a class action, but instead to file individual claims."

145.   The statement is misleading and a fraud of omission. Watts disparages class actions by comparing Syngenta to Starlink, a different case with different facts. Watts does not explain that the 60,000 individual clients of Watts Guerra are putative members of the class actions in federal court. Watts does not acknowledge that there is also a motion for class certification filed in the Hennepin County proceedings in Minnesota on June 15, 2016, covering Minnesota corn growers, and this also covers the Watts Guerra clients who are Minnesota residents. Watts does not explain that putative class members are and remain class members unless they affirmatively opt-out of the class proceedings. Watts does not inform his 60,000 clients and prospective clients that he entered into

52

secret Joint Prosecution Agreements with the class counsel in the federal MDL and

Minnesota to exclude his 60,000 clients as class members. Watts does not inform his

60,000 clients and prospective clients, that his 40 percent contingent attorney fee will

greatly exceed the fees that may be assessed for claims in the class actions in federal and

state court.

146.    In a July 2, 2016 news update, Watts writes that a Special Master has been

appointed in the federal MDL litigation in Kansas and the Minnesota proceedings:

"Since settlement discussions are underway, it is important for any corn, soybean and

milo growers who want to participate in the settlement, to sign up (with Watts Guerra,

LLP) as soon as possible, so they don't get left out."

147.    The statement is dishonest and a fraud of omission. Watts does not inform

his 60,000 clients and prospective clients that the settlement discussions involve all corn

growers as a global settlement. All growers are covered through the class actions

underway in the federal MDL in Kansas and Minnesota. The idea that growers have to

quickly rush to sign with Watts Guerra and joint venture partners, to have a seat at the

settlement table, is dishonest, an effort by Watts Guerra and its joint venture partners to

exploit corn growers to sign unreasonable 40 percent contingent fee agreements.

148.    Despite pending motions for class certification in the federal MDL and the

Minnesota state court, Defendants continued to solicit farmers on-line and in community

meetings for their "mass tort … individual suit" attorney fee fraud scheme. From

MidwestCornLawsuit.com on August 8, 2016, was this (emphasis added):

> MN Judge extends deadline til (sic) December 11, 2016. *It's not too late to sign up.*
>
> Join the more than 50,000 corn farmers who have stood up to Syngenta and their reckless business practices.  If you grew corn in 2013, 2014 or 2015 you lost income due to Syngenta's careless actions
>
> It's Time To Hold Syngenta Accountable (with direction for the farmer to contact Watts Guerra and sign a retainer agreement with Watts Guerra and joint venture partners).

149.    The solicitation is misleading and a fraud of omission. The statement suggests the only claims claims against Syngenta are the 60,000 claims filed by the Watts Guerra group, and makes no mention that all 600,000 corn growers across the United States, including the targeted and still unsigned growers, are class members in the federal MDL and Minnesota class actions.

150.    Despite certification of a nationwide class of corn growers and nine state bellwether classes by the federal MDL Court on September 26, 2016 and the Minnesota court for Minnesota growers on November 3, 2016. Defendants continued to solicit corn growers across the Corn Belt with illusory deadlines and other misleading solicitations through direct mailings and on coordinated websites. Defendants exhorted growers on December 8, 2016 on their 3DollarCorn.com website:

> Please Call Us or Explore our Website to Learn Why Thousands of Farmers have Filed Individual Claims Against Syngenta for Destabilizing the Corn Markets.  We Are Here To Help You!  To date over 54,000 farmers have filed claims with our team.

The website does not inform growers that they are putative members of a certified class of growers.  Rather, the website exhorts growers who are "ready to make the no risk decision to file a claim" that they should fill out the on-line application and retainer agreement.

151.   In a direct mailing to corn growers in early 2017, Defendants proclaimed:

OUR EXPERTS WILL TESTIFY TO $1.90 PER BUSHEL IN DAMAGES
DEADLINE TO SIGN UP IS JANUARY 25, 2017

Defendants sent this misleading solicitation after class certification, while litigating the consolidated individual cases in Minnesota through a Joint Prosecution Agreement with lead counsel in the federal MDL "because we believe [individual claims] will yield a much better recovery for farmers." Defendants' letter does not inform the grower that the damage experts were retained by the MDL class counsel. Defendants' letter does not inform the grower that two experts attest to damages of 48.69 cents a bushel and 40.90 cents a bushel for corn growers across the United States, covering a five-year period from 2013-18. Defendants' dishonest communication was intended to excite corn growers to the possibility of a significant damage claim, and thereby sign Defendants' individual 40 percent attorney fee contracts, despite the pending MDL class actions. And Defendants continue to exhort growers that individual claims are superior to a class action. Defendants do not explain the benefits of class proceedings, where attorney fees are assessed after notice to the class and consideration of objections by absent class members.

152.    On 3DollarCorn.com and other websites on February 22, 2017, Defendants continued to exhort corn growers:

>  Sometime in March 2017 will be the final opportunity to file an individual claim with our firm. Watts Guerra will stop taking any new grower clients by the end of March 2017. Your opportunity to have an individual claim with us is ending. While our firm represents over 50,000 growers with individual claims … there are also some lawyers representing a class action. *Our clients who were signed up by June 15, 2016, are automatically excluded from being in the class. You can either have a class claim or an individual claim but not both.* Any grower who meets the class definition (grew corn but not a Syngenta seed) will automatically become a member of a class and prevented from having an individual negligence claim like the over 60,000 other corn growers who chose to file an individual claim. ….

153.    Defendants' misleading website again provides no analysis of the benefits of a corn grower remaining in the class, and simply filing a claim with the claim administration firm in the event of settlement or recovery. The communication misleads growers that Defendants' "mass tort … individual suit" approach will get a better result. Nowhere do Defendants disclose or discuss their Joint Prosecution Agreements with federal MDL and Minnesota class counsel.

**E.    60,000 Individual Lawsuits Filed In Minnesota State Courts**

154.    In early 2015 Defendants began aggressively filing hundreds of individual Farmer lawsuits against Syngenta in district courts in Minnesota. Syngenta removed each case to the federal MDL proceeding in Kansas. Syngenta claimed that the Minnesota state court lawsuits presented a federal question under the federal common law of foreign relations because of China's right to regulate genetically modified crops within its

borders.

155.   Defendants successfully opposed removal to the MDL, with Judge

Lungstrom concluding that federal common law of foreign relations did not apply. In

opposing removal, Defendants claimed to the media that the attempted removal by

Syngenta was "a blatant attempt to shoehorn [Farmers] into litigating [their individual

claims] in an MDL format that is more convenient for Syngenta." Although Syngenta

surely wanted to litigate all claims in a single forum, Defendants' media claim was

disingenuous. They did not disclose that they fought removal so they could proceed with

their "mass tort … individual suit" 40 percent attorney fee gambit, rather than having

Farmers participate in the class action proceedings in the federal MDL with much lower

attorney fees and costs assessed against each Farmers' claim in the event of a recovery.

156.   Defendants asserted in each individual memorandum opposing removal that

their client "does not have the time or resources to litigate" the case in Kansas federal

court, and the decision to pursue only state claims was intentional. And yet, after remand,

Defendants entered into secret Joint Prosecution Agreements with the class counsel in the

MDL in Kansas and Minnesota, with an explicit agreement to exclude the 60,000

Farmers from class certification proceedings. Defendants sought automatic exclusion for

Farmers from the class so that if the classes were certified, they would not have to

disclose class membership to Farmers and affirmatively opt Farmers out of the class, and

thereby have to explain to each client the pros and cons of class membership as opposed

to an individual action.

157.    Although Defendants repetitively boast through their solicitations that their

"mass tort … individual suit" model is superior to class actions, they used the secret Joint

Prosecution Agreements with the federal MDL counsel, never disclosed to Farmers and

never approved by the respective courts and filed under seal, to cooperatively litigate the

cases. Defendants acknowledge this cooperative litigation effort in a December 1, 2015

update of the litigation status to Farmers, when Frank Guerra writes:

> "The Plaintiffs' Steering Committee in Minnesota, led by Frank Guerra,
> and three other co-lead counsel from Minneapolis – Lew Remele, Dan
> Gustafson and Bill Sieben is working together with co-leads from the
> federal court MDL to schedule discovery in an expeditious manner, and to
> share work product in order to prosecute the cases of our clients in the most
> efficient manner possible."

158.    Defendants thereby acknowledge their "mass tort … individual suit"

advertising solicitations were a scam. Defendants consolidated individual lawsuits in

Minnesota were cooperatively litigated with counsel in the federal MDL, with the MDL

counsel taking the lead role in exchange for a 5.5 percent common benefit fee payment

by Defendants in the event of a recovery for corn growers. Syngenta likewise litigated the

MDL and Minnesota class action and Defendants' consolidated individual claims as the

same essential proceeding. With the class actions and consolidated cases litigated as the

same proceeding, Defendants' claim to Farmers that their individual suits would achieve

a better result than the MDL class action was always misleading.

159.    Defendants' litigation status updates, like all client communications, were a

fraud of omission. Defendants did not inform Farmers that class certification proceedings were underway in the federal MDL and Minnesota. Defendants did not inform Farmers that they were putative class members in the MDL when their individual cases were filed in Minnesota state courts. Defendants did not inform Farmers they had entered into Joint Prosecution Agreements with MDL class counsel to exclude Defendants' 60,000 individual clients from class certification proceedings. Defendants sold away the Farmers' right to participate in a class action resolution, with no knowledge and informed consent and no consideration for Farmers.

**F.     Secret Joint Prosecution Agreements To Exclude 60,000 Farmers From Class Actions In Federal MDL In Kansas And Minnesota**

160.    Filing and litigating an individual case is not enough to opt out of a class action.  A party who wants to opt-out needs to follow the specific procedures set by the court in an order certifying the class or approving a class settlement. Fed. R. Civ. P. 23; Minn. R. Civ. P. 23. Knowing this, Defendants contrived a scheme to exclude their 60,000 clients, with lawsuits filed in Minnesota, from class certification proceedings in the MDL and Minnesota.

161.    It would be awkward for Defendants to have to communicate with each of their individual clients, to get the corn growers' signatures to opt-out of a certified class, after spending months telling growers that their "mass tort … individual suit" model was superior to a class action. It would be awkward for Defendants to explain to their clients that the class action counsel in the MDL in Kansas had the lead role in litigating the

59

Syngenta lawsuits, after months of telling growers that class action counsel are ineffective and inefficient. It would be awkward for Defendants to explain to their clients that in a class action, attorney fee awards for huge common fund cases like Syngenta are typically 10-12 percent of the common fund, as opposed to the 40 percent contingent fee attempted by Defendants through their "mass tort … individual suit" advertising con.

## 1.     Joint Prosecution Agreement

162.    Defendants thus concocted a scheme to buy their 60,000 clients out of the class certification proceedings – a pay-for-exclusion scheme – through an agreement to not contest class certification in the MDL and pay the MDL counsel some portion of a common benefit fee, if the MDL counsel agreed to exclude the 60,000 Watts Guerra clients from class certification and notice requirements, with no need for each class member to affirmatively opt-out of the class to continue to proceed as an individual claim. Defendants accomplished this scheme through a secret Joint Prosecution Agreement with the MDL class counsel, filed under seal, with the opt-out provision never discussed or disclosed to Farmers, the Watts Guerra clients. This is an epic fraud of omission; a violation of Defendants' fiduciary duties of disclosure to Farmers; a violation of Rule 23 requirements to provide informed notice to putative class members with a right to opt-out through their own signatures, thus signifying informed consent to the presiding court; and a breach of professional ethics rules requiring that clients be reasonably informed of all litigation options and consent to those options.

163.   Of the 600,000 corn growers in the United States, the overwhelming majority of all individually filed cases, about 90 percent of the individual cases, are the 60,000 cases filed by Defendants in Minnesota. *See* Coordination Order, *In Re: Syngenta AG MIR162 Corn Litigation*, No. 14-MD-2591 Doc. No. 1099 at 1. Defendants entered into a private side-deal with federal MDL class counsel to opt-out of the MDL class action upon certification. *See* Amended and Restated Joint Prosecution Agreements, dated June 18, 2015 ("JPA") (stating individual growers whose counsel executed the JPA are excluded from any MDL class).

164.   The JPA states:

> None of the Federal MDL Co-Leads will propose to certify any litigation or settlement class that includes any [Watts Guerra group clients] whose Syngenta Case was filed in State Court and is pending  as of the date of such motion for class certification and whose name is included on the Excluded Client List as of the date of such motion for class certification (the "Excluded Clients"); if any of the Federal MDL Co-Leads seek to certify any litigation or settlement class such co-leads will expressly exclude from his/their proposed class definition(s), and will advocate for the exclusion and oppose the inclusion of, all Excluded Clients.  *Id*. at 14.

165.   This exchange, however, was not free. Specifically, the Defendants who executed the JPA for their 60,000 individual lawsuit clients expressly agreed not to oppose class certification. The JPA stated: "None of the members of the [Watts Guerra group] will oppose class certification in the Federal MDL as such certification excludes from its class definition(s) the Excluded Clients."

166.   Additionally, Defendants agreed to pay for the agreement that they would

not be required to opt-out their 60,000 individual clients from the class proceedings by

consenting to pay MDL class counsel one-half (5.5 percent) of the 11 percent common

benefit attorney fee and costs assessment by the federal MDL court for attorneys with

clients in the MDL.

167.   Farmers were never informed by Defendants of this secret side agreement;

an agreement that takes the huge step of automatically opting Farmers out of the federal

MDL class certifications, without disclosure and informed consent by the clients.

168.   Defendants never disclosed the JPA to Farmers, because Defendants

wanted to protect their right to collect their "mass tort …individual suit" 40 percent

attorney fee from each client. Defendants did not want to lose Farmers to the class action

proceedings, effectively underway in the federal MDL since the December 11, 2014

MDL panel consolidated all pending federal cases in the U.S. District Court of Kansas,

and where Farmers may be assessed only 10-12 percent of their claim for attorney fees

and costs.

## 2.   Minnesota Participation Agreement

169.   The side-deal was not limited to Defendants and the MDL class counsel – a

nearly identical tag-along agreement exists between Defendants and the Minnesota class

counsel. On April 11, 2016, the MDL and Minnesota Liaison Counsel sent an email to

the lawyers involved in the Minnesota litigation, attaching a copy of the Minnesota

Participation Agreement ("MPA"). *See* Email, dated April 11, 2016. The MPA includes

nearly identical language as the JPA which contractually excluded Defendants' 60,000

Farmers from *any* class *and* precluded the individual Farmers from contesting the class.

Specifically, the MPA states:

> None of the MN MDL Co-Leads will propose to certify any litigation or
> settlement class that includes any Minnesota Client whose Syngenta Case
> was filed in Minnesota state court and is pending as of the date of any order
> granting class certification and whose name is included on the Client List as
> of the date of such order granting class certification (the "Excluded
> Clients"); if the MN MDL Co-Leads seek to certify any litigation or
> settlement class, they will not include in their proposed class definition(s)
> any Excluded Clients, unless Participating Counsel consents to the same;
> and
>
> Participating Counsel will not oppose class certification in the MN MDL if
> the MN MDL Co-Leads exclude from their proposed class definition(s) all
> Excluded Clients …

*See* MPA, pp. 21-22 at ¶ d.i. & ii.

On June 13, 2016, Liaison Counsel sent an email confirming the arrangement:

> Under the Joint Prosecution Agreement, cases on file in the MN need to be
> certified to MDL Counsel in order to be opted out of the MDL class.
> Please provide the following to MDL Counsel:
>
> - List of all cases currently on file in MN
> - the attached declaration (sic)

*See* email, dated June 13, 2016. The attached declaration, in relevant part, required

signatories to the MPA to confirm:

> We possess records identifying the names of such producers so that they
> can be excluded from any class in the above-captioned multidistrict
> litigation based on objective criteria.

In other words, like the JPA, the MPA excluded Defendants' 60,000 clients – 9000

Minnesota farmers – from class certification and notice and opt-out requirements, in exchange for a promise not to oppose class certification, and required participating counsel to pay an 11 percent assessment into a Minnesota common benefit fund, directing 50 percent of the total 11 percent common benefit fees (5.5 percent), assessed by the federal MDL court to Defendants for transfer to the MDL class counsel as required by the JPA, and 50 percent of the 11 percent (the second 5.5 percent) to Minnesota class counsel. The JPA and MPA were cash-for-exclusion deals. It was back-scratch fever; Defendants would not contest class certification in the federal MDL and Minnesota and would pay MDL and Minnesota class counsel to abandon their fiduciary role to *all putative members* of the class, and agree to exclude Defendants' 60,000 clients from class certification and notice and opt-out requirements, with the sleight-of-hand claim that Defendants' 60,000 clients, corn growers across the United States similarly situated to the corn growers in the MDL and Minnesota, were never part of the class.

### 3.     Fraud Of Omission, Breach Of Fiduciary Duty And Professional Ethics Disclosure And Informed Consent Requirements

170.    Defendants sent Syngenta Litigation Newsletter(s) to Farmers on April 1, 2015, May 6, 2015, June 9, 2015, August 25, 2015, and December 1, 2015; April 12, 2016 and October 21, 2016; March, 2017 and September 26, 2017, and February 9, 2018. The 2015 and April 12, 2016 letters do not acknowledge or discuss the terms of the JPA or MPA.

171.    By October 21, 2016 letter, *sixteen months* after the June 18, 2015 amended

JPA was entered into with the federal MDL counsel, and a month after the MDL class

was certified as a national class on September 26, 2016, Watts Guerra finally notified

Farmers of the existence of the JPA, but even then, not addressing the terms or explaining

why they excluded Farmers from the class proceedings (emphasis in original):

> On September 26, 2016, United States District Judge John Lungstrum certified a nationwide class action in this case. Since then, we have received numerous client calls asking how this ruling affects their claim against Syngenta.  Because of a joint prosecution agreement we negotiated with the class action lawyers, *it does not affect your claim*.  By agreement, any case filed by our law firm on or before June 15, 2016 is excluded from the class definition. While we continue to amicably work with the class action lawyers, *our clients are entitled to pursue their own lawsuits, and do not even need to opt out of the class*.

172.    The foregoing letter explanation is utterly silent on core requirements

related to the class notice process under Fed. R. Civ. P. 23 and Minn. R. Civ. P. 23 and

Minn. R. Prof. Conduct (MRPC) 1.7 (litigation options and benefits and informed

consent). Worse, nothing in the letter gives any inkling to these 60,000 putative class

members that they can, in fact, participate in the federal MDL or Minnesota classes or

that class participation may be in their best interests. The communication calls into

question any assertion that the 60,000 putative class members are choosing to exclude

themselves from the class based on their own, knowing decision with advice and counsel.

*See* MRPC 1.7. Ultimately, there is simply no indication that excluded class members

received unbiased information about the federal MDL and Minnesota class actions,

including pros and cons. No previous case in the entire expanse of American

jurisprudence endorses the proposition that class counsel – the fiduciary for the entire class – may agree to exclude certain putative class members from the notice process in exchange for an agreement by certain lawyers to not contest class certification and an exchange of money and favors.

173.    As a result of the JPA and MPA, the 60,000 Watts Guerra clients, Farmers in this case, were expressly excluded from class participation in the federal MDL. The MDL court defined the class, in relevant part, as all corn growers in the United States who priced at least one bushel of corn after November 18, 2013, "unless that farmer filed a Minnesota lawsuit on or before June 15, 2016, which causes the producer to be excluded from the class." *See* Notice of Class Action Lawsuit.

174.    The Minnesota trial court defined the Class, in relevant part, as follows:

> All Minnesota producers that priced corn after September 2013. Excluded from the Class are … any producers listed on the Minnesota Class Exclusion list filed with this Court (attached as Exhibit A to an affidavit of Minnesota class counsel).

Order, *In re: Syngenta Litigation*, No. 27-CV-15-3785, at 1 (Henn. Cty. Feb. 10 2017) ("Amended Class Definition Order"). The *actual effect* of the Amended Class Definition Order is to define the class as follows:

> All Minnesota producers that priced corn after September 2013, except those whose attorneys agreed to not contest class certification and pay to class counsel a portion of their fees pursuant to a private agreement, precluding their clients from receiving notice and exercising their right to choose to join the class.

175.    As a result of the JPA and MPA, the 60,000 Watts Guerra clients were

expressly excluded from class participation in the federal MDL and about 9000 of the

60,000, who are about 30 percent of the 32,000 Minnesota corn growers, were also

excluded from the Minnesota class. In short, the due process and equal protection rights

of 60,000 Farmers were not protected; they were not able to exercise their individual

right to be part of the class or opt-out of it; they were not given court-approved notice

that they were members of the class proceedings nor were they able to make their own

choice in deciding whether or not to opt-out of the federal MDL and Minnesota classes.

176.    This overt exclusion of the 60,000 Watts Guerra clients through secret side-

agreements, never disclosed to the Farmers until sixteen months after the agreements

were negotiated and signed, and never explaining why Farmers were automatically

excluded from the federal MDL and Minnesota classes, is a fraud of omission by

Defendants and violates Defendants' fiduciary obligations to the Farmers and

professional responsibility rules requiring that clients be reasonably informed of litigation

options.

177.    Also, Defendants' JPA and MPA agreements, a secret pay-for-exclusion

from the class, violate the fundamental notice and informed consent requirements of Rule

23. *Either putative class members are within a class or they are not within a class.*

Lawyers cannot use private agreements, for their own pecuniary interest, to exclude class

members from the class in advance of class certification, and then say the class members

were never members of the class. It is sleight-of-hand circular reasoning; a fraud upon the

67

excluded class members and the courts with supervision over the class. The JPA and

MPA violate Rule 23 in at least four ways: (1) the failure to disseminate notice to the

*entire* class is an unmistakable violation of Rule 23; (2) class counsel are contractually

precluded from disseminating notice to the entire class, and therefore abdicate their

fiduciary obligation to adequately represent the entire class; (3) the class should be

defined by the defendant's conduct, in this case Syngenta's conduct, and the JPA and

MPA arbitrarily removes class members who are subject to the exact same conduct by

Syngenta from the class, merely because Defendants and class counsel contracted

through a back-door agreement that Defendants would not contest class certification and

would pay money to class counsel; and (4) decades of Rule 23 precedent confirm that

mass opt-outs are unenforceable; the opt-out right is inherently individual in nature and,

as such, a group of lawyers like Defendants cannot opt-out a group of putative class

members.

178.    A Minnesota ethics expert, David Sasseville, who served on the Minnesota

Lawyers Professional Responsibility Board from 2003-09, addressed the ethical failures

of the JPA in a July 30 2015 letter. Commenting on the pay-for-exclusion deal, Sasseville

unequivocally concluded the JPA's framework violated attorney fiduciary obligations to

clients and Rule 1.7 of the Rules of Professional Responsibility, stating:

> Only in rare and exacting circumstances … do the Rules permit lawyers to
> serve multiple masters, or to undertake client representation that results in
> the dilution of what would otherwise be an absolute duty of undivided
> loyalty to each client.

> It is my opinion, to a reasonable degree of professional certainty, that appointment of the [Watts Guerra group] to a leadership role in the Minnesota State Court Syngenta MDL could result in numerous, potential conflicts particularly in light of the terms and conditions of the [JPA]…

179.   In rendering his opinion that Defendants' use of the JPA violated fiduciary obligations and ethics norms, Sasseville noted that the JPA requires Defendants to seek an 11 percent attorney fee and costs assessment as a common benefit fund from each lawyer with a client participating in the Minnesota litigation, and then transfer 5.5 percent of this 11 percent (one-half) to the MDL class counsel without a court order or actual accounting of the work performed in exchange for the money.

180.   In addition, Sasseville noted that the JPA prohibited Defendants from objecting to class certification proceedings in the federal MDL as long as Defendants' clients were excluded from the class. And the JPA directed the MDL class counsel "[t]o specifically refrain from *interfering with or altering the terms and conditions of any fee agreement with any of [Defendants'] clients*." JPA, pg. 14 ¶ iii (emphasis added); *see also* Minnesota MPA at 2(d)(Class Certification)(iii): "The MN MDL Co-Leads *will not seek to interfere with or alter the terms and conditions of any fee agreement with any Client (e.g., reduce or cap the fee of Participating Counsel or its Co-Counsel, if any)."* Defendants thus bought cover that MDL and Minnesota class counsel and all other lawyer signatories to the JPA and MPA would not challenge their 40 percent attorney fee scheme, thus reducing the possibility that a presiding court would cap Defendants'

69

contingent fees.

181.    As a tangent to this litigation, the MDL and Minnesota courts correctly declined to approve the JPA and MPA when asked by Defendants to approve the agreements. For example, on no less than two occasions the MDL court declined the opportunity to "endorse" the JPA. The MDL court said the agreements were private contractual agreements between lawyers that were not within the Court's purview. *See* Dkt. No. 403 at 16 ("no basis for the Court to interject itself at this time into private contractual relationships"); Dkt. No. 935 at 8-9 ("[no] requirement or proper reason for the Court to approve a side agreement [between Defendants and MDL class counsel").

182.    However, when the courts approved class notice that automatically excluded Defendants' 60,000 clients from the class definition and the obligatory Rule 23 notice and opt-out requirements, the courts erred in accepting Defendants' sleight-of-hand claim that Farmers were never part of the class because they were excluded from the class by the JPA and MPA. The courts accepted Defendants' claim because *they presumed*, in orders approving class notice, that Defendants had satisfied their fiduciary and ethical obligations to procure informed consent from individual Farmers to be automatically excluded from the class proceedings. *See* Memorandum And Order, *In re: Syngenta Litigation,* MDL No: 2591 (Nov 23, 2016), Dkt. No. 2703, at p. 2 (emphasis added):

> [E]conomic incentives exist for counsel who are not part of the leadership
> to procure opt outs in order to pursue a course in which those counsel might

be better situated to earn a fee. Much information has been disseminated to putative class members in an effort to influence their decisions, some of which is at least arguably inaccurate, which reflects those counsel's zeal. *To ensure that those who actually may possess a potential claim are in fact the decision makers*, it is more than reasonable to require that they take the very minimal effort required to sign and mail an opt out.

*See also* Memorandum, *In re: Syngenta Litigation*, No. 27-CV-15-3785, at p. 10 (Henn.

Cty. Feb. 10, 2017):

Implicit … is the assumption that the independent counsel for [Defendants' clients] will not inform [Defendants' clients] of their rights. Attorneys owe their clients certain duties to communicate and inform … [t]hat duty is owed to the client and this Court has no reason or basis to question the satisfaction of that duty or usurp that responsibility … [i]n addition, attorneys could have discussed the options available to their clients at the time of filing an individual claim, deciding which jurisdiction to file in, and whether to enter the JPA and/or MPA.

183.   The MDL and Minnesota courts presumed that Defendants had satisfied

their fiduciary and ethical obligations as the result of Defendants' material

misrepresentations and omissions. As stated in the JPA at p. 12, ¶ 2(b)(v):

By including a client on its Excluded Client List, the applicable member of the [Defendants'] Group represents and warrants that (1) it believes that it is in such client's best interest to be excluded from the proposed [MDL] class and (2) would recommend to such client that he/she/it opt out of the proposed class, if such client was included in the applicable class definition …

Likewise, the MPA states, at p. 21, ¶2 (b)(v):

By including a client on its Client List, Participating Counsel represents and warrants that (1) it believes that it is in such client's best interest to be excluded from any and all proposed class actions in the Federal MDL or the MN MDL and (2) would recommend to such client that he/she/it opt out of the proposed class, if such client was included in the applicable class definition.

184.    No conversations or other communications occurred between Defendants and Farmers about the JPA and MPA. Defendants did not inform Farmers that despite their individual lawsuits filed by Defendants in the Minnesota state courts, they were members of the MDL and Minnesota class actions. Defendants did not inform Farmers of the terms of the JPA and MPA and the pros and cons of class participation. There was no discussion about whether it was in the best interest of an individual Farmer to be excluded from the class actions and no informed consent. Defendants' misrepresentations and omissions to the MDL and Minnesota courts violated their fiduciary and ethical obligations as officers of the court and were a fraud upon the courts and an obstruction of justice.

185.    As a consequence of the reliance by the MDL and Minnesota courts on Defendants' misrepresentations and omissions, the courts were led to violate Rule 23 by allowing Defendants' private pay-for-exclusion agreements, the JPA and MPA, to supersede Rule 23. Rule 23 does not allow a rhetorical *non sequitur* by lawyers with a pecuniary self-interest; that putative members of a class are not putative members of the class just because their lawyers say so. Rule 23 has no language allowing lawyers to privately contract away its protections for putative class members. Credulity aside, it is statistically implausible, if not impossible, that none of the 60,000 Farmers excluded from the federal MDL and Minnesota classes would refuse to participate in the class proceedings if they had received honest and ethical advice.

186.    But for the courts' presumption that Defendants were honestly and ethically advising Farmers about the pros and cons of class participation, as opposed to Defendants' "mass tort … individual suit" advertising con, the courts would have adhered to Rule 23 requirements *for all class members*, and not just some class members, and Farmers' due process and equal protection rights would have been protected.

187.    Defendants' misrepresentations and omissions led the courts to impute notice of class certification to Defendants' clients through Defendants. However, any client who happened to see a court-authorized notice of class certification directed to class members, or received informed communications and consent from Defendants (which did not occur), would have no recourse if the client wished to participate in the class; the client had already been excluded by Defendants.

188.    The fundamental issue is whether private attorneys, representing individual corn growers, can agree to pay class counsel a portion of their attorneys' fees to have their clients excluded from the class definition, and in turn avoid the mandatory Rule 23 court-authorized class notice and opt-out process. The answer is no. More than a half century ago, the United States Supreme Court *mandated* that due process requires that every member of a Rule 23 class receive notice. *Mullande v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Twenty years later, the Supreme Court reaffirmed this position, unequivocally stating, "[n]otice to identifiable class members *is not* a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous

requirement of Rule 23." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 176 (1974)

(emphasis added). Notice exists to vindicate absentee class members' due process rights

by ensuring they – *and they alone* – are the final arbiter of whether to participate in the

class. *Id*. at 175.

## G.    Settlement Term Sheet

189.    Following the June 23, 2017 jury verdict for a class of corn growers in

Kansas, the MDL court, in consultation with the courts in Illinois and Minnesota,

appointed a Plaintiffs' Settlement Negotiation Committee ("PNC") of four attorneys to

negotiate a possible global settlement with Syngenta. The committee included

Christopher A. Seeger, a lawyer for corn growers in the MDL, Daniel Gustafson, a

lawyer for the Minnesota class, and Clayton A. Clark and defendant Mikal Watts,

lawyers representing the individual suits (Defendants boast that they filed 90 percent of

the individual suits).

190.    On September 25, 2017, midway through the Minnesota class trial, the

PNC executed a settlement term sheet with Syngenta for a $1.51 billion settlement. The

settlement was announced to the media as a "global settlement" to cover corn growers'

claims in all the pending class action and individual lawsuits in the United States.

191.    Although Defendants have never disclosed the term sheet to Farmers, the

term sheet was attached to MDL motion pleadings on March 26, 2018. The term sheet

envisioned a two-prong settlement: a nationwide class action settlement and a separate

parallel inventory settlement for Defendants' 60,000 cases filed in Minnesota. According to Ellen Reisman, Eq., a Special Master for settlement discussions, as she discussed the term sheet during a December 19, 2017 settlement conference in the MDL court in Kansas:

> The structure of that term sheet was that there would be one class action settlement, perhaps a nationwide one and a *separate Minnesota one*, perhaps just a nationwide one along with a *parallel inventory settlement*.

192.    The term sheet established jurisdiction with the MDL court to administer the national class action settlement, and jurisdiction with the 23rd District Court of Brazoria County, Texas, to administer the settlement of Defendants' 60,000 individual lawsuits.

193.    It is no surprise that Defendants never disclosed the term sheet to Farmers. After three years of Defendants' misuse of the Minnesota judicial system to perpetrate their "mass tort … individual suit" attorney fee fraud scheme, Defendants shamelessly negotiated the transfer of Farmers' lawsuits to a Texas court in Watts Guerra's backyard, with no previous connection to the Syngenta litigation, to address Defendants' 40 percent contingent fee contracts.

194.    The transfer of jurisdiction for Defendants' 60,000 individual lawsuits, after three years of litigation in the Minnesota courts, apparently was not well-received by the Hennepin County District Court. A January 11, 2018 email by a disgruntled lawyer indicates that a "nuclear winter will follow with a (very) uncooperative Judge M."

Judge M is presumably the Honorable Laurie J. Miller, the Hennepin County District Court Judge handling the Minnesota class and Defendants' 60,000 consolidated individual lawsuits.

195.    The parties had difficulty papering the two-prong agreement into a formal settlement agreement. On December 8, 2017, the parties told the MDL court that they were continuing to negotiate terms of the agreement for approval by the court. On December 19, 2017, a settlement conference was held in the MDL court to discuss the status of the negotiations. The reason for the delay is found in a disclosure by Reisman during the December 19th settlement conference:

> [I]n mid-October or so I was approached by some of the plaintiffs' lawyers who suggested that if they amongst themselves could work out *an agreement on how a pot of fees could be divided up percentage-wise* among the different groups who are participating here then maybe we wouldn't have to go the separate class action route and the inventory route.

196.    On January 25, 2018, a settlement conference was held in Hennepin County District Court in Minnesota to discuss the status. Another settlement conference was scheduled for February 26, 2018 at the federal courthouse in Kansas.

## H.    National Class Action Settlement Agreement

197.    On February 26, 2018, various lawyers including the PNC and Syngenta and proposed Settlement Class Counsel of Gustafson, Seeger and Patrick J. Stueve, a lead lawyer for the corn growers in the MDL class action, finalized the term sheet settlement as a National Class Action Settlement Agreement ("Settlement Agreement") with a

76

payment of $1.51 billion by Syngenta to resolve the class actions and individual claims of more than 600,000 corn growers across the United States. The two-prong approach in the term sheet disappeared, with the parties filing a Fourth Amended Class Action Complaint in the MDL asserting, as the umbrella for the settlement, a Fed. R. Civ. P. 23 class covering all corn growers in the United States. The Fourth Amended Complaint utilized for class certification the Lanham Act, 15 U.S.C. §§ 1111 *et seq*., a federal deception statute, Minnesota statutory claims under the Prevention Of Consumer Fraud Act, Minn. Stat. §§ 325F.68-70, and the Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-48, and various other state statutory and common law claims.

198.    If the MDL court approves the Settlement Agreement – preliminary approval, notice to invite objections and final approval – Syngenta will pay $1.51 billion into a Settlement Fund to pay (1) corn growers (and certain landlords), grain handling facilities, and ethanol production facilities who submit eligible claims, (2) court-approved attorneys' fees and expenses, (3) service awards to certain plaintiffs who helped prosecute the case, (4) fees of the Special Masters appointed by the courts, and (5) costs relating to notice and class administration. The amount eligible claimants will receive depends on the amount of the claimants' interests in U.S. corn – a pro rata disbursement of the $1.51 billion for those who file claims with no reversion of any settlement funds to Syngenta – priced for sale between September 15, 2013, and April 10, 2018, the date of preliminary approval of the settlement agreement by the MDL court.

1.    **Attorneys' Fees And Expenses**

199.   The Settlement Agreement provides at § 7.2.1, in pertinent part:

> As part of the Settlement, Settlement Class Counsel and other counsel representing Class Members who performed work for the benefit of Class Members shall make Fee and Expense Applications to the Honorable John W. Lungstrom of the United State District Court for the District of Kansas (MDL court), or the Honorable David R. Herndon of the United States District Court for the District of Kansas, or the Honorable Laurie J. Miller of the Fourth Judicial District Court, County of Hennepin, State of Minnesota for a Fee and Expense Award. …

200.   The Settlement Agreement provides at § 7.2.2:

> Any Fee and Expense Award in conjunction with this Settlement shall be issued by the [MDL] Court, in consultation with and approved by the Honorable David R. Herndon … and the Honorable Laurie J. Miller … in a written order by the Court and shall be paid from the Settlement Fund. The Court's Fee and Expense Award, however, as set forth above, shall be separate from its determination of whether to approve the Settlement. In the event the Court approves the Settlement, but denies, in whole or in part, the Fee and Expense Applications by Settlement Class Counsel and other counsel representing Class Members, the Settlement shall nevertheless be binding on the Parties. If the Court declines to approve the Settlement, no Fee and Expense Award shall be paid. Syngenta shall have no involvement in, nor any liability, with respect to, the allocation and distribution of the Fee and Expense Award.

201.   The Settlement Agreement provides at §§ 7.2.3 and 7.2.3.2 that "[a]s set forth in Section 9.18.2, disputes arising from the Fee and Expense Award shall be subject to the jurisdiction of the [MDL] Court, except that:"

> Matters arising from client fee contracts and referring counsel referral agreements involving Class Members with claims pending at any time in *In re Syngenta Class Action*, Court File No. 27-CV-15-12625, in the Fourth Judicial District, County of Hennepin, State of Minnesota (the "Minnesota Plaintiffs"), shall be subject to the jurisdiction of the Honorable Laurie J.

Miller of the Fourth Judicial District, County of Hennepin … For example, Judge Miller shall have exclusive and continuing jurisdiction to:

- Approve fee disbursements with respect to all Minnesota Plaintiffs; and

- Decide disputes between counsel for various Class Members rising out of the representation of any Minnesota Plaintiffs.

Nothing in this Section is intended to interfere with the claims administration process or the allocation process as it relates to the national class settlement to be filed before and overseen by the Honorable John W. Lungstrom and the United States District Court for the District of Kansas. However, it is specifically agreed herein that any dispute as it relates to this Section 7.2.3.2 shall be under the exclusive and continuing jurisdiction of the Honorable Laurie J. Miller of the Fourth Judicial District Court, County of Hennepin, State of Minnesota.

202.    The Settlement Agreement provides at § 9.18.1:

Pursuant to the Final Approval Order, and except as provided for in Sections 7.2.3 and 9.18.2 of this Agreement, the [MDL] Court shall retain continuing and exclusive jurisdiction over the Parties and their counsel, the Special Masters, the Notice Administrator, and the Claims Administrator, the Settlement Fund and the trustee of the Settlement Fund, and all Class Members with respect to the terms of this Agreement, the proper provision of all benefits thereunder, and the implementation and enforcement of its terms, conditions, and obligations. The terms of this Agreement shall be incorporated into the Final Approval Order of the Court, which shall allow that Final Approval Order to serve as an enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to this Agreement.

203.    The Settlement Agreement provides at § 9.18.2, in pertinent part:
The Court also shall retain exclusive and continuing jurisdiction over the Fee and Expense Award; however, as set forth in Section 7.2.2 of this Agreement any Fee and Expense Award shall be issued by the Court, in consultation with an approved by the Honorable David R. Herndon of the United States District Court for the Southern District of Illinois and the Honorable Laurie J. Miller of the Fourth Judicial District Court, County of Hennepin, State of Minnesota … Moreover, as set forth in Section 7.2.3,the Court shall retain jurisdiction over any disputes arising out of or relating to the orders of the Court relating to the Fee and Expense Award, except that:

… (§ 9.18.2.2 below)

204.    The Settlement Agreement provides at § 9.18.2.2 (identical to § 7.2.3.2

above):

> Matters arising from client fee contracts and referring counsel referral
> agreements involving Class Members with claims pending at any time in *In
> re Syngenta Class Action*, Court File No. 27-CV-15-12625, in the Fourth
> Judicial District, County of Hennepin, State of Minnesota (the "Minnesota
> Plaintiffs"), shall be subject to the jurisdiction of the Honorable Laurie J.
> Miller of the Fourth Judicial District, County of Hennepin … For example,
> Judge Miller shall have exclusive and continuing jurisdiction to:
> - Approve fee disbursements with respect to all Minnesota Plaintiffs;
>   and
> - Decide disputes between counsel for various Class Members rising
>   out of the representation of any Minnesota Plaintiffs.
>
> Nothing in this Section is intended to interfere with the claims
> administration process or the allocation process as it relates to the national
> class settlement to be filed before and overseen by the Honorable John W.
> Lungstrom and the United States District Court for the District of Kansas.
> However, it is specifically agreed herein that any dispute as it relates to this
> Section 7.2.3.2 shall be under the exclusive and continuing jurisdiction of
> the Honorable Laurie J. Miller of the Fourth Judicial District Court, County
> of Hennepin, State of Minnesota.

**2.    Split Jurisdiction**

205.    The Settlement Agreement provides that "Settlement Class Counsel and

other counsel representing Class Members who performed work for the benefit of the

Class Members shall make Fee and Expense Applications" to either the MDL court, the

Illinois court, or the Hennepin County District Court. § 7.2.1. The Settlement Agreement

grants jurisdiction to the Hennepin County District Court over "client fee contracts and

referral counsel agreements" – "[a]pprove fee disbursements [and] [d]ecide disputes

80

between counsel" – for Hennepin County District Court File No. 27-cv-15-12625 (the

class action file). §§ 7.2.3 and 7.2.3.2. The Settlement Agreement does *not* grant

jurisdiction to the Hennepin County District Court over "client fee contracts and referral

counsel agreements" for File No. 27-cv-3875 (Defendants' 60,000 consolidated

individual lawsuits). *Id*. With the MDL court retaining ultimate jurisdiction to "issue[] …

any Fee and Expense award," §§ 7.2.2 and 9.18.2, the MDL court has jurisdiction to

approve fee and expense awards and decide referral fee disputes between Defendants

pertaining to Defendants' 60,000 consolidated individual lawsuits.

### 3. Undisclosed Joint Prosecution Agreements Showing Trade Of Money And Favors

206.    The Settlement Agreement does not acknowledge the secret Joint

Prosecution Agreements showing a trade of money and favors between Defendants and

class counsel. Defendants have never disclosed to Farmers the money they agreed to pay

MDL and Minnesota class counsel – a share of Farmers' recovery from Syngenta

(Farmers' money) – in exchange for (1) the exclusion of Farmers from the class

proceedings, and (2) agreements that class counsel will not contest Defendants' 40

percent contingent fee contracts with individual farmers. At all times since the inception

of Defendants' "mass tort … individual suit" attorney fee scam, Defendants placed their

self-dealing financial interests above Farmers' interests.

### 4. Undisclosed Agreement To Share Fees

207.    The exclusion of Defendants' 60,000 individual lawsuits from the

jurisdictional reach of the Hennepin County District Court, and Watts' disappearance as

one of the Settlement Class Counsel, and Reisman's disclosure to the MDL court on

December 19 that the plaintiffs' lawyers were negotiating a fee-share agreement, all

suggest an undisclosed agreement between Defendants and Settlement Class Counsel on

how the "[Farmers'] pot of fees could be divided up percentage-wise." An undisclosed

fee share agreement is confirmed by a January 11, 2018 email filed in the MDL on March

26, 2018, Clerk Doc. 3514-4 which states, in pertinent part:

> In NY.
>
> Had dinner with Karron, Gustafson, Seeger and Stack, and Seeger announced that everyone had accepted the 12/4 mediator's proposal, including Clark (who agreed to 15%), and now we're [Defendants] the only obstacle to same.
>
> Seeger offered us 17.5%.
>
> Karron, Gustafson, Seeger, and Stack all consider the 9/25K irrelevant but for the fact that SYT is out for $1.5B; and, they've set up the 1/25 impromptu hearing to bludgeon us to take 17.5%.
>
> Per them, Smith is prepared to wire around us and let us try to opt out of her national settlement class into the nuclear winter that will follow with a (very) uncooperative Judge M.

208.     Although a fee-share agreement has not been disclosed to Farmers,

Settlement Class Counsel apparently have agreed to give Defendants 17.5 percent of the

attorney fee award by the MDL court to class counsel as a percentage of the gross

common fund. The Settlement Agreement documents indicate that Settlement Class

Counsel may seek a fee award that is 30 percent of the gross common fund – significantly

more than the typical 10-12 percent for common funds exceeding $1 billion. Defendants'

17.5 percent share of 30 percent of the $1.438 billion designated for corn growers' claims

could total about $75 million in fees. However, Defendants will then extract additional

fees from each individual Farmer through the submission of Farmers' claims and the 40

percent contingent fee contract applied to Farmers' net recovery, an undisclosed double-

dip, which could easily total another $125 million in fees. Farmers may thereby pay $200

million in fees to Defendants for $350-400 million in gross claim payments – a range of

.46 to .58 percent of Farmers' gross claim recovery.

### 5.    Undisclosed Double-Dip

209.    When Defendants submit Farmers' claims through the national class action

settlement, Farmers, as class members, will pay two sets of lawyers: (1) class counsel

through a fee award as a percentage of the common fund; and (2) Defendants under the

terms of the individual contingent fee contracts.

210.    Settlement Class Counsel will seek a percentage of the gross common fund

as it relates to corn growers claims – $1.438 of the $1.51 billion is designated for corn

growers' claims – for fees and expenses. *See* Settlement Agreement, § 7.2.1 ("As part of

the Settlement, Settlement Class Counsel and other counsel representing Class Members

who performed work for the benefit of Class Members shall make Fee and Expense

Applications … ."); § 7.2.2 ("Any Fee and Expense Award in conjunction with this

Settlement shall be issued by the Court … and shall be paid from the Settlement Fund.");

*see also* Exhibit 2 to the Settlement Agreement (Claim Form) at p. 2, Part IV (emphasis

added) ("*You don't have to have a lawyer to make a claim*."); Exhibit 3 to Settlement

Agreement (Long-form Notice) at p. 6 ("You are a member of the Settlement Class

certified by the Kansas Federal Court … even if you have already filed your own lawsuit

against Syngenta."); *id*. at p. 7 ("Even if you have already filed your own lawsuit or

retained your own attorney, you are a part of the Settlement Class … Additionally, even

if you have previously excluded yourself from a class, you are still a member of the

Settlement Class unless and until you submit a timely, valid request for exclusion from

this Settlement Class.").

211.    The result is that attorneys' fees are paid to class counsel as a percentage of

the gross common fund, with a net distribution of the fund to class members. *See*

Settlement Agreement, § 10 (attorney fees and expenses will be "deducted from the total

settlement fund before any payments are made."). A class member who is represented by

a lawyer through a contingent fee contract will then be charged by the lawyer, from the

net claim payment to the class member, the contingent fee. *See* Settlement Agreement,

Exhibit 3, pp. 17-18, § 24 and § 26 (emphasis added):

> The Court has appointed Daniel E. Gustafson, Christopher A. Seeger, and
> Patrick J. Stueve to represent the Settlement Class. These lawyers are
> referred to as "Settlement Class Counsel." *If you want to be represented by
> your own lawyer, you may hire one at your own expense*.
>
> *Settlement Class Counsel will seek up to one-third of the settlement fund* as
> attorneys' fees and reimbursement for [$____] in costs and expenses. The
> Court may award less than these amounts.

84

These fees represent compensation to hundreds of lawyers who participated in the litigation against Syngenta, including the lawyers who tried the cases in Kansas and Minnesota, and any other lawyers to whom the Court awards fees. …

If you hired and attorney before you received this notice and want to stay in the Settlement Class, *you should discuss the issue of attorneys' fees with your lawyer*.

If you choose to hire your own lawyer, *you will be responsible for that lawyer's fees and expenses*.

212.   Assume class counsel request and receive an award of 10 percent of the common fund for fees and expenses. This means that every plaintiff who submits a claim will be assessed an effective 10 percent of their claim for attorneys' fees and expenses. Thus, for example, a plaintiff is slotted to receive $90,000 net of class counsel's 10 percent of fees and expenses. This means the plaintiff's gross award is $100,000 and class counsel's share is $10,000. This $10,000 fee and expense award for class counsel will be shared by attorneys who provided work and expenses for the class, with fees shared in proportion to the work performed for the class, or disclosed and appropriate fee share agreements between lawyers for the class.

213.   A Farmer in this case, individually represented by Defendants through a contingent fee contract, will then pay 40 percent of his $90,000, or $36,000, to Defendants. The Farmer's final claim recovery is $54,000, with a total fee and expense charge of $46,000 ($10,000 to class counsel and $36,000 to Defendants). Farmers will thus be charged a grotesque 46 percent of their gross claim for attorneys' fees and

85

expenses, whereas members of the class who are not represented by lawyers other than class counsel will be charged 10 percent of their recovery.

214.   Using the same $100,000 gross award and the same formula, if class counsel are awarded 30 percent of the common fund as an attorney fee, a possible request by Settlement Class Counsel based on language in the settlement documents, individual members of the class will pay 30 percent of their claim payment for fees, whereas Farmers will pay 58 percent.

### 6.   Farmers Are Injured

215.   Defendants' 40 percent contingent fee contracts drive their "mass tort … individual suit" scheme. The secret Joint Prosecution Agreements direct the MDL and Minnesota class counsel, who are on the PNC and Settlement Class Counsel, "[t]o specifically refrain from interfering with or altering the terms and conditions of any fee agreement with any of [Defendants'] clients."  JPA, pg. 14 ¶ iii.

216.   The MDL court may exercise its inherent authority to cap Defendants' contracts with individual Farmers. However, the court would have to cap the contracts at zero to prevent a situation where Farmers are not assessed more fees and expenses than corn growers represented by class counsel.

217.   Whatever fees may be sought, and whether the Settlement Agreement receives a final approval from the MDL court after notice and objections and withstands appellate scrutiny, has no bearing on the merits of this lawsuit. Farmers are injured by

Defendants' deceit and breach of fiduciary duties. Farmers were deprived of the

opportunity to make an informed decision as to whether to pursue an individual claim or

a class action claim without representation by Defendants. Farmers ask the Court to

declare that Defendants' retainer agreements with Farmers are void *ab initio* and that

Defendants have forfeited their claim to any compensation from individual Farmers, and

that Defendants have waived any quantum meruit claim against Farmers through their

dishonest representations and omissions and conduct.

## VIOLATIONS OF MINNESOTA RULES OF PROFESSIONAL CONDUCT FOR LAWYERS

### A.    False Advertising

218.    Minnesota rules on lawyer advertising fall under the broad heading of

"Information about Legal Services" under Rule 7 of the Minnesota Rules of Professional

Conduct (MRPC). Rule 7.1 specifically prohibits materially false or misleading

advertising. A communication is false or misleading if it contains a material

misrepresentation of fact or law, or omits a fact necessary to make the statement

considered as a whole not materially misleading." This rule governs all communications

about a lawyer's services, not just advertising. Comment [1], Rule 7.1. The rule's

comments note that truthful statements can be misleading if facts are omitted, or may

impermissibly create unjustified expectations about results. Comment [2], Comment [3],

Rule 7.1.

219.    Defendants engaged in materially false and misleading communications

with Farmers who were deceptively solicited to sign 40 percent contingent fee retainer contracts with Defendants and secretly excluded by Defendants from pending class actions against Syngenta in the MDL in Kansas and Minnesota.

## B.    Failure To Communicate Honestly With Clients About Litigation Options

220.    Rule 1.4 of the MRPC directs the lawyer to keep the client "reasonably informed" of the status of the case and explain the matter to the extent necessary for the client to make informed decisions. MRPC 1.4(b) (lawyer shall explain matter to allow client to make reasonably informed decisions); *see also* MRPC 1.7, 2005-Comment (defining "informed consent" as the full disclosure of all material facts and an explanation of risks and alternatives that are available to each affected client); Rule 1.0(c) of the Model Code (defines a client's informed consent to litigation options as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct."). This requires the lawyer to explain the progress of the litigation so the client will have sufficient information to be an intelligent participant.

221.    Defendants failed to communicate honestly with Farmers about their litigation options by deceptively soliciting Farmers to sign 40 percent contingent fee retainer contracts and secretly excluding Farmers from pending class actions against Syngenta in the MDL in Kansas and Minnesota.

### C.     Breach Of Fiduciary Duties

222.    Rule 1.2(a) of the MRPC requires a lawyer to "abide by a client's decisions concerning the objectives of the representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued." Rule 1.4(a)(1) states that a lawyer "shall … promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these rules" and reasonably keep the client informed about "the means by which the client's objections are to be accomplished" and "the status of the matter." Rule 1.0(f) states that "[i]nformed consent" denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.

223.    Defendants violated the "informed consent" rules by deceptively soliciting Farmers to sign 40 percent contingent fee retainer contracts and secretly excluding Farmers, without their knowledge and consent, from pending class actions against Syngenta in the MDL in Kansas and Minnesota. Defendants breached their fiduciary duties by negotiating a two-prong settlement evidenced in the September 25, 2017 term sheet, with no disclosure to Farmers, with Defendants attempting to transfer jurisdiction for Farmers' lawsuits to a Texas county court with no previous connection to the Syngenta litigation, to address Defendants' 40 percent contingent fee contracts.

Defendants breached their fiduciary duties in the Settlement Agreement by failing to disclose or acknowledge the Joint Prosecution Agreements showing a trade of money and favors with MDL and Minnesota class counsel, failing to disclose an agreement with Settlement Class Counsel to share fees, and failing to disclose Defendants' double-dip of attorneys' fees they will assess against Farmers through the submission of Farmers' claims during claim administration and the 40 percent contingent fee retainer contracts applied to Farmers' net recovery. At all times since the inception of Defendants' "mass tort … individual suit" attorney fee fraud scheme in 2014 through this very day, Defendants have placed their self-serving financial interests above Farmers' interests.

224.   Rule 1.7 of the MRPC prohibits lawyers from representing multiple clients when there is a conflict of interest. Upon information and belief, Defendants represented class members in the MDL and Minnesota class actions, along with the 60,000 Farmers for whom Defendants filed individual claims in the Minnesota state courts. Defendants violated conflict of interest rules in negotiating the JPA and MPA joint prosecution agreements and the September 25, 2017 term sheet settlement agreement secretly excluding Farmers from the class proceedings, and the Settlement Agreement, because the class members and Defendants' individual clients will be subject to different attorney fee payments under the terms of the Settlement Agreement.

225.   Rule 1.8(g) of the MRPC addresses aggregate settlements of individual lawsuits and requires consent to negotiate, disclosure of terms and approval of client); *see*

*generally* American Bar Association ("ABA") Comm. On Ethics & Prof'l Responsibility

Formal Op. 438 (2006) (aggregate settlement of individual lawsuits requires consent to

negotiate, approval of client and disclosure of terms including proposed fees and method

of payment). Defendants violated Rule 1.8(g) by failing to procure the consent of

individual Farmers to negotiate the September 25, 2017 term sheet settlement and

concealing terms of the two-prong settlement excluding Farmers from the national class

action settlement and transferring jurisdiction of Farmers' lawsuits to a Texas court with

no previous connection to the Syngenta litigation to address Defendants' 40 percent

contingent fee contracts.

**D.     Unreasonable Fees**

226.    Rule 1.5(a) of the MRPC states in pertinent part, "A lawyer shall not make

an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for

expenses." Defendants violated Rule 1.5(a) by deceptively soliciting Farmers to sign 40

percent contingent fee retainer contracts and secretly excluding the Farmers, without their

knowledge and informed consent, from pending class actions against Syngenta in the

MDL court in Kansas and Minnesota. Defendants do not disclose that they will employ

their contingent fee contracts to extract additional fees from each class member under the

terms of the Settlement Agreement, with Defendants pursuing a double-dip of attorneys'

fees from Farmers.

**E.     Undisclosed Fee Agreements**

227.    Defendants violate Rule 1.5(a) through the use of the secret JPA to prohibit class counsel from "interfering with or altering the terms and conditions of any fee agreement with any of [Defendants'] clients, JPA, pg. 14, ¶ iii, and thereby accomplish an undisclosed and grotesque double-dip from Farmers' individual claim payments. Defendants violate Rule 1.5(e)(2) by entering into fee share agreements with MDL and Minnesota class counsel and Settlement Class Counsel without Farmers' knowledge and consent.

**F.     Misconduct**

228.    Rule 4.1 of the MRPC prohibits lawyers from knowingly making a false statement of fact or law. Rule 8.4(a) of the MRPC prohibits violations or attempts to violate the Rules of Professional Conduct. Rule 8.4(b) prohibits criminal acts such as mail and wire fraud and obstruction of justice. Rule 8.4(c) prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation. Rule 8.4(d) prohibits conduct that is prejudicial to the administration of justice. Defendants violated Rule 8.4(a) – (d) by deceptively soliciting Farmers to sign 40 percent contingent fee retainer agreements, using the U.S. mail and internet and email to procure the signed retainer contracts, and secretly excluding Farmers, without their knowledge and consent, from class proceedings against Syngenta in the MDL court in Kansas and Minnesota. Defendants misled the MDL and Minnesota courts through misrepresentations and omissions to believe that

92

Defendants were complying with their fiduciary and ethical obligations to educate

Farmers about their litigation options and gain informed consent from individual Farmers

for exclusion from the class proceedings.

## MAIL AND WIRE FRAUD
## 18 U.S.C. §§ 1341, 1343

229.    Defendants conspired and associated with each other to pursue a "mass tort

… individual suit" attorney fee fraud scheme against Farmers, through systemic

fraudulent communications and conduct, to persuade Farmers to sign 40 percent

contingent fee retainer contracts with Defendants to pursue individual lawsuits against

Syngenta. In pursuit of the scheme, Farmers were secretly excluded, without their

knowledge and consent, from participating in class actions against Syngenta in the MDL

in Kansas and Minnesota, where attorney fees are determined by the presiding courts as

fiduciaries for the members of the class. Defendants knowingly devised and participated

in a scheme or artifice to defraud Farmers or to obtain the money or property of farmers

by means of false or fraudulent pretenses, representations, or promises in violation of 18

U.S.C. §§. 1341, 1343

230.    As set forth with particularity in ¶¶ 72-188 above, Defendants' "mass tort

… individual suit" attorney fee fraud scheme against Farmers was pursued through a

barrage of television and internet advertising, direct-mail campaigns, and hundreds of in-

person "town hall" community meetings, with affirmative misrepresentations and

omissions of material facts and illusory claims intended to persuade Farmers to sign

Defendants' 40 percent contingent fee contracts to pursue individual claims. The scheme

included the secret Joint Prosecution Agreements with MDL and Minnesota class

counsel, trading money and favors, in exchange for Farmers' automatic exclusion from

the class proceedings during the litigation, without their knowledge and consent.

231.    Defendants' scheme to defraud is contrary to public policy and fails to meet

or reflect the standards of moral uprightness, fundamental honesty, fair play and

righteous dealings in the general and business life of the decent members of society in

violation of 18 U.S.C. §§ 1341, 1343.

232.    Defendants could foresee that the interstate wires would be used "for the

purpose of" advancing, furthering, executing, concealing, conducting, participating in or

carrying out the scheme, within the meaning of 18 U.S.C. §§ 1341, 1343.

233.    In particular, Defendants knew or could foresee that the U.S. mail and

interstate wires would be used to further or facilitate their scheme to defraud by (among

other things):

  a. deceptively marketing and soliciting each individual Farmer as a client to pursue an individual lawsuit against Syngenta through the transmission of retainer contracts with a 40 percent contingent fee;

  b. secretly excluding each individual Farmer, without his/her knowledge and consent, through the Joint Prosecution Agreements, from pending class actions against Syngenta in the MDL court in Kansas and Minnesota;

  c. misleading the MDL and Minnesota courts, through material misrepresentations and omissions, that Defendants had satisfied their ethical and fiduciary obligations by procuring informed consent

94

from individual Farmers to be automatically excluded from the MDL and Minnesota class proceedings;

d.     falsely stating to Farmers through mailed advertisement flyers that "only those who sign up (with Defendants) are eligible to pursue claims";

e.     providing deceptive and misleading litigation updates to Farmers while never informing Farmers that they were members of putative class actions in the Kansas MDL and Minnesota and secretly excluded by Defendants from the class action proceedings to accomplish Defendants' "mass tort … individual suit" attorney fee fraud scheme; and

f.     failing to acknowledge in the Settlement Agreement the Joint Prosecution Agreements and the exchange of money and favors with MDL and Minnesota class counsel, and an apparent fee share agreement with Settlement Class Counsel, and Defendants' undisclosed intent to procure a double-dip of attorneys' fees from individual Farmers through the claim administration process and Defendants' 40 percent contingent fee contracts.

234.   Defendants, acting singly and in concert, personally or through their agents, used the U.S. mail and interstate wires or caused the U.S. mail or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out a scheme to defraud Farmers within the meaning of 18 U.S.C. §§ 1341, 1343.

235.   It is not possible for Farmers to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and concealed Defendants' scheme because the particulars of many such communications are within the exclusive control and knowledge of the Defendants and other presently unknown individuals.

95

236.    By way of example, however, Defendants specifically used the U.S. mail or interstate wires or caused the U.S. mail or interstate wires to deliver each and every false, deceptive and misleading statement through the internet and advertisements and mailings described in ¶¶ 72-188 above.

237.    All of the wire communications described above crossed interstate and international borders by reason of the technology used to transmit the communications. Some or all of the communications described above have appeared and continue to appear on Defendants' website(s) since the date of their original posting.

238.    Each and every use of the U.S. mail and interstate wires described above was committed by the Defendants with the specific intent to defraud Farmers or to obtain the property of Farmers by means of false or fraudulent pretenses, representations, or promises. Defendants' acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343 constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B).

239.    Farmers justifiably relied on Defendants' fraudulent representations and omissions made pursuant to the above-described scheme in that, among other things, Farmers retained Defendants to represent them in the individual actions against Syngenta, and were deprived of the opportunity to make an informed decision as to whether to pursue an individual claim or a class action claim. Farmers are subject to Defendants' fraudulent scheme to extract unreasonable attorneys' fees from the deceived and unknowing Farmers.

240.    Defendants' pattern of mail and wire fraud activity was intended to extract

unreasonable attorneys' fees from Farmers, as opposed to merely providing the traditional

functions of giving legal advice to Farmers.

## OBSTRUCTION OF JUSTICE
### 18 U.S.C. §§ 1503, 1512(c)(2)

241.    Defendants conspired and associated with each other for the purpose of

corruptly endeavoring to influence an officer of a United States court in violation 18

U.S.C. § 1503.

242.    Defendants also conspired and associated with each other for the purpose of

corruptly obstructing, influencing, and impeding the MDL class action proceedings in

violation of 18 U.S.C. § 1512(c)(2).

243.    Defendants' actions were corrupt because they acted knowingly and

dishonestly with the specific intent to subvert or undermine the integrity of a proceeding

in a United States court. In particular, Defendants used the Joint Prosecution Agreement

to mislead the MDL court, through material misrepresentations and omissions, that

Defendants had satisfied their fiduciary and ethical obligations by procuring informed

consent from individual Farmers to be automatically excluded from the MDL class

proceedings during the litigation as set forth in ¶¶ 160-88.

244.    Said conduct constitutes a knowing and dishonest intent to subvert or

undermine the integrity of the United States courts, and thereby is an obstruction of

justice in violation of 18 U.S.C. §§ 1512(c)(2), 1503.

## CLASS ACTION ALLEGATIONS

245.    The named Plaintiffs bring this class action pursuant to Rule 23 of the

Federal Rules of Civil Procedure in their representative capacity on behalf of themselves

and a class (the "Class" or "Farmers") of all persons similarly situated, defined as

follows:

> All persons or entities who signed attorney retainer contracts with Watts
> Guerra, LLP and its joint venture partners, for representation in claims,
> suits or other matters arising out of and resulting from economic damages
> sustained from the use of Syngenta GMO products or those products'
> adverse effect on the U.S. corn market.

The class definition may be amended as this litigation proceeds, to include, as defendants,

other law firms and lawyers who are not listed on attorney retainer contracts with Watts

Guerra, LLP, but conspired with Defendants to pursue their "mass tort … individual suit"

attorney fee fraud scheme, and violated fiduciary obligations to Farmers, for financial

benefit.

246.    Plaintiffs meet the requirements of Rule 23(a) to bring this action on behalf

of the Class because:

## A.    Numerosity

The Class consists of thousands of individuals or entities, about 60,000 corn

growers, according to public information, and is so numerous that joinder of all members

as individual plaintiffs is impracticable.

98

**B.    Common Questions Of Law And Fact**

247.    There are questions of law and fact common to the Class. Such common questions include, but are not limited to: (1) whether the approximate 60,0000 individual clients of Watts Guerra and its joint venture partners, the Farmers who are plaintiffs in this lawsuit, were deceived by false and misleading advertising and marketing to believe that Defendants' "mass tort … individual suit" model for litigation of claims against Syngenta was superior to class action proceedings pending in the federal MDL in Kansas and Minnesota; (2) whether Farmers were reasonably informed and agreed to the Joint Prosecution Agreements which excluded Farmers from the federal MDL and Minnesota class certification and notice and opt-out proceedings; (3) whether Farmers were deceived through a fraud of omission and whether Defendants violated their fiduciary and ethical duties to gain informed consent from individual Farmers for automatic exclusion from the class proceedings; (4) whether Defendants obstructed justice by misleading the presiding class action courts that Defendants had complied with their fiduciary and ethical obligations to gain informed consent from individual Farmers for exclusion from the class proceedings; (5) whether Farmers were deceived so that Watts Guerra and its joint venture partners could claim or attempt to claim a 40 percent contingent attorney fee from each individual Farmer for claims against Syngenta; and (6) whether Farmers injured by Defendants' deceptive and fraudulent practices can procure monetary, equitable and injunctive relief including a forfeiture of Defendants' compensation for

Farmers' Syngenta litigation claims, whether assessed by Defendants against Farmers through the unlawful and void retainer contracts or court settlement documents.

## C.    Typicality

248.    Plaintiffs' claims are typical of the claims of the Class.

## D.    Adequacy Of Representation

249.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and Plaintiffs have engaged competent counsel experienced in class actions and complex litigation.

## E.    Predominance And Superiority

250.    This action is properly maintainable as a class action for the following independent reasons and under the following portions of Rule 23:

251.    The prosecution of separate actions by members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(B).

252.    The Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.  Fed. R. Civ. P. 23(b)(2).

253.    Questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

## COUNT I
## DECLARATORY JUDGMENT ACT
## 28 U.S.C. §§ 2201 AND 2202

254.    Farmers incorporate by reference and re-allege all prior paragraphs of this Class Action Complaint.

255.    Farmers request a declaratory judgment under 28 U.S.C. Code, Chapter 151 – Declaratory Judgments, and specifically U.S.C. § 2201, the federal statute authorizing declaratory relief to construe a contract, and Fed. R. Civ. P. 57, governing the procedure for obtaining a declaratory judgment. Section 2202 authorizes the Court to assess equitable relief and statutory damages and penalties for each invalid contract under authorities such as RICO, 18 U.S.C. § 1961, *et seq*., the Prevention Of Consumer Fraud Act, Minn. Stat. §§ 325F.68-70, False Statement In Advertising Act, Minn. Stat. § 325F.67, Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-48, Misconduct by Attorneys/Penalties for Deceit or Collusion, Minn. Stat. §§ 481.071 and 481.07, the Minnesota private attorney general statute, Minn. Stat. § 8.31, and common law claims of breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, fraudulent inducement, fraudulent execution, aiding and abetting

breach of fiduciary obligations and fraud, and civil conspiracy.

256.    There is an actual case and controversy between the parties. Farmers ask the Court to declare and enter a judgment that Defendants' retainer contracts with Farmers are void *ab initio* and that Defendants have forfeited their claim to any compensation from individual Farmers, and that Defendants have waived any quantum meruit claim against Farmers through their dishonest and unlawful representations and omissions and conduct.

**COUNT II**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATONS ACT**
**FEDERAL RICO**
**(Against Mikal C. Watts, Francisco Guerra, and Watts Guerra, LLP)**
**18 U.S. C. § 1962(c)**

257.    Farmers incorporate by reference and re-allege all prior paragraphs of this Class Action Complaint.

258.    The elements of an 18 U.S. C. § 1962(c) claim are (1) a defendant person; (2) operating and managing; (3) an enterprise; (4) through a pattern; (5) of racketeering activity. A civil RICO plaintiff must also prove (6) the plaintiff is injured in its business or property; (7) by reason of the acts of racketeering. 18 U.S.C. § 1964(c).

**A.      Defendants/Enterprises**

259.    Watts and Guerra constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact" (hereinafter referred to as the "Individual Enterprise").

102

a.   Watts and Guerra share the common purpose of (among other things) fraudulently and deceptively pursuing a "mass tort … individual suit" attorney fee fraud scheme against corn growers across the United States as addressed in ¶¶ 1-228.

b.   Watts and Guerra are related in that they are partners in Watts Guerra, LLP and they jointly own or control Watts Guerra, LLP.

c.   The Individual Enterprise possesses sufficient longevity for Watts and Guerra to carry out their purpose(s) in that the Individual Enterprise has operated since 2014 (at a minimum), continues to operate, and continues to pursue an attorney fee fraud scheme intended to (1) deprive Farmers of the opportunity to make an informed decision as to whether to pursue an individual claim or a class action claim without representation by Watts and Guerra and Watts Guerra, LLP and other lawyers and law firms owned by or controlled by members of the Individual Enterprise, and (2) extract unreasonable attorneys' fees from the individual Farmers.

Watts and Guerra are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of the Individual Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Said pattern of racketeering activity consisted of, but was not limited to, numerous acts of mail and wire fraud and the obstruction of justice, specifically described in ¶¶ 229-44.

260.   In the alternative to ¶ 259, Watts Guerra, LLP, as a legal entity, constitutes an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). Watts and Guerra are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of Watts Guerra, LLP through a pattern of racketeering activity within the meaning of 18

103

U.S.C. §§ 1961(1), 1961(5) & 1962(c). Said pattern of racketeering activity consisted of, but was not limited to, the acts of mail and wire fraud and obstruction of justice, described in ¶¶ 229-44.

261.   In addition to the defendants and enterprises alleged in  ¶¶ 259-60 above, Daniel M. Homolka, P.A., Yira Law Office LTD, Hovland & Rasmus, PLLC, Dewald Deaver P.C., LLO, Givens Law, LLC, Mauro, Archer & Associates, LLC, Johnson Law Group, Wagner Reese, LLP, VanDerGinst Law, P.C., Patton, Hoversten & Berg, P.A., Cross Law Firm, LLC, Law Office of Michael Miller, Pagel Weikum, PLLP, and Wojtalewicz Law Firm, Ltd., constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are a group of individuals and legal entities associated in fact (hereinafter referred to as the "Law Firm Enterprise").

    a.    The members of the Law Firm Enterprise share the common purpose of (among other things) fraudulently and deceptively pursuing a "mass tort … individual suit" attorney fee fraud scheme against corn growers across the United States as addressed in ¶¶ 1-228.

    b.    The members of the Law Firm Enterprise are related in that they are lawyers and law firms retained by Farmers, they all benefit or seek to benefit from the "mass tort … individual suit" attorney fee fraud scheme, and they were all directly or indirectly solicited by Watts or Guerra or Watts Guerra, LLP to participate in the "mass tort … individual suit" attorney fee fraud scheme.

    c.    The Law Firm Enterprise possesses sufficient longevity for its members to carry out their purpose(s) in that the Law Firm Enterprise has operated since 2014 (at a minimum), continues to operate, and continues to pursue an attorney fee fraud scheme intended to (1) deprive Farmers of the opportunity to make an informed decision as to whether to pursue an individual claim or a

class action claim without representation by members of the Law
Firm Enterprise, and (2) extract unreasonable attorneys' fees from
the individual Farmers.

Watts, Guerra, and Watts Guerra, LLP are each a "person" within the meaning of 18

U.S.C. §§ 1961(3) and 1962(c), who individually conducted participated in, engaged in,

and operated and managed the affairs of the Law Firm Enterprise through a pattern of

racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c).

Said pattern of racketeering activity consisted of, but was not limited to, numerous acts of

mail and wire fraud, conspiracy to commit mail and wire fraud and the obstruction of

justice, specifically described in ¶¶ 229-44.

262.   At all relevant times, the enterprises alleged in ¶¶ 259-61 were engaged in,

and their activities affected, interstate commerce.

263.   At all relevant times, the pattern of mail and wire fraud and obstruction of

justice was intended to extract an unreasonable attorney fee from Farmers, as opposed to

merely providing the traditional functions of giving legal advice to Farmers.

**B.    Pattern Of Racketeering Activity**

264.   All of the acts of racketeering described in ¶¶ 229-44 were related so as to

establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in

that their common purpose is to defraud Farmers of their money; their common and

intended result is to defraud Farmers of money; Watts, Guerra, Watts Guerra, LLP., and

their agents participated in all acts of racketeering; Farmers are the victims or intended

105

victims of the acts of racketeering; and the acts are otherwise related by distinguishing characteristics and were not isolated events.

265.    All of the acts of racketeering described in ¶¶ 229-44 are continuous so as to form a pattern of racketeering activity in that Watts and Guerra, directly or indirectly, have engaged in the predicate acts since 2014 (at a minimum), and the acts of racketeering are ongoing and will continue until Watts, Guerra and Watts Guerra, LLP have extracted unreasonable attorneys' fees from Farmers through an undisclosed fee share agreement with Settlement Class Counsel and application of their unlawful and void contingent fee retainer contracts; the acts of racketeering are also the regular way in which Watts, Guerra and Watts Guerra, LLP do business.

266.    As a direct and proximate result of, and by reason of, the activities of Watts, Guerra and Watts Guerra, LLP, and their conduct in violation of 18 U.S.C. § 1962(c), Farmers are injured in their business and property, within the meaning of 18 U.S.C. § 1964(c).

267.    Farmers are injured by Watts, Guerra and Watts Guerra, LLP's deceptive and fraudulent practices as set forth in ¶¶ 72-217 and unlawful and void retainer agreements regardless whether Farmers pay a 40 percent contingent fee or any fee. The risk that Farmers may have to pay a 40 percent fee or any fee to Defendants for their deceptive and fraudulent practices and breach of fiduciary duties and unconscionable conduct and obstruction of justice is sufficient to justify equitable and injunctive relief,

pursuant to 18 U.S.C. § 1964(a), including a disgorgement of the profits and forfeiture of

the compensation that Watts, Guerra and Watts Guerra, LLP seek to obtain from Farmers

in the Syngenta litigation claims, whether claimed by Watts, Guerra and Watts Guerra,

LLP against Farmers through the unlawful and void retainer agreements or court

settlement documents.

268.    Pursuant to 18 U.S.C. § 1964(a), Defendants should also be restrained from

further violating 18 U.S.C. § 1962(c). Farmers request equitable and injunctive relief

including a divestiture of Watts, Guerra and Watts Guerra, LLP's interests in the

enterprise and forfeiture of compensation for Farmers' Syngenta litigation claims.

Farmers request monetary damages to the extent that Watts, Guerra and Watts Guerra,

LLP claim and capture any compensation, and treble the forfeited compensation and

monetary damage, pursuant to 18 U.S.C. § 1964(c), and costs and legal fees in the

prosecution of their claims against Watts, Guerra and Watts Guerra, LLP .

**COUNT III**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATONS ACT**
**FEDERAL RICO CONSPIRACY**
**(Against Joint Venture Partners/Conspirators)**
**18 U.S. C. § 1962(d)**

269.    Farmers incorporate by reference and re-allege all prior paragraphs of this

Class Action Complaint.

270.    A conspiracy claim under 18 U.S. C. § 1962(d) requires proof: (1) that

someone violated § 1962(c); (2) that the conspirators agreed to the overall objective of

107

the § 1962(c) violation; and (3) that the plaintiff was injured "by reason of" acts of racketeering. 18 U.S.C. § 1964(c). A § 1962(d) claim extends liability to persons who do not operate and manage the enterprise or who do not engage in a pattern of racketeering.

271.    As alleged in Count II, one or more of the following individuals violated 18 U.S.C. § 1962(c): Mikal C. Watts, Francisco Guerra, and/or Watts Guerra, LLP. Any person who is found to have violated 18 U.S.C. § 1962(c) is hereinafter referred to as an "Operator/Manager" for the remainder of this Count.

272.    In this Count, Daniel M. Homolka, P.A., Yira Law Office LTD, Hovland and Rasmus, PLLC, Dewald Deaver, P.C., LLO, Givens Law, LLC, Mauro, Archer & Associates, LLC, Johnson Law Group, Wagner Reese, LLP, VanDerGinst Law, P.C., Patton, Hoversten & Berg, P.A., Cross Law Firm, LLC, Law Office of Michael Miller, Pagel Weikum, PLLP, and Wojtalewicz Law Firm, Ltd. are each referred to as "Conspirator."

273.    Each Conspirator intended to or agreed to further an endeavor of the Operator/Manager(s) which, if completed, would satisfy all of the elements of a substantive RICO criminal offense, 18 U.S.C. § 1962(c), and adopted the goal of furthering or facilitating the criminal endeavor.

274.    Pursuant to the conspiracy in violation of section 1962(d), Farmers are injured by overt acts that are acts of racketeering or otherwise unlawful under the RICO statute, which include (among other acts) acts of mail and wire fraud and obstruction of

108

justice, as described in ¶¶ 229-44, committed through the enterprises alleged in Count II.

275.    Farmers are injured by each Conspirator's deceptive and fraudulent practices as set forth in ¶¶ 72-217 and unlawful and void retainer agreements regardless whether Farmers pay a 40 percent contingent fee or any fee. The risk that Farmers may have to pay a 40 percent fee or any fee to Defendants for their deceptive and fraudulent practices and breach of fiduciary duties and unconscionable conduct and obstruction of justice is sufficient to justify equitable and injunctive relief, pursuant to 18 U.S.C. § 1964(a), including a disgorgement of the profits and forfeiture of the compensation that each Conspirator seeks to obtain from Farmers in the Syngenta litigation claims, whether claimed by each Conspirator against Farmers through the unlawful and void retainer agreements or court settlement documents.

276.    Pursuant to 18 U.S.C. § 1964(a), each Conspirator should also be restrained from further violating 18 U.S.C. § 1962(c). Farmers request equitable and injunctive relief including a divestiture of each Conspirator's interests in the Syngenta litigation claims and forfeiture of compensation for Farmers' claims. Farmers request monetary damages to the extent that each Conspirator claims and captures any compensation, and treble the forfeited compensation and monetary damage, pursuant to 18 U.S.C. § 1964(c), and costs and legal fees in the prosecution of their claims against each Conspirator.

## COUNT IV
## PREVENTION OF CONSUMER FRAUD ACT
## MINN. STAT. §§ 325F.68-70

277.    Farmers incorporate by reference and re-allege all prior paragraphs of this

Class Action Complaint.

278.    Minn. Stat. § 325F.69, subdivision 1 provides:

The act, use, or employment by any person of any fraud, false pretense, false
promise, misrepresentation, misleading statement or deceptive practice, with the
intent that others rely thereon in connection with the sale of any merchandise,
whether or not any person has in fact been misled, deceived, or damaged thereby,
is enjoinable as provided in section 325F.70.

279.    The term "merchandise" within the meaning of Minn. Stat. § 325F.69

includes legal services.  *See* Minn. Stat. § 325F.68, subd. 2 (2008).

280.    Defendants' conduct described above constitutes multiple, separate

violations of Minn. Stat. § 325F.69, subd. 1. 65. Defendants violated candor and

misrepresented material facts through affirmative misstatements and omissions by

deceptively soliciting Farmers to sign 40 percent contingent fee retainer agreements and

secretly excluding Farmers, without their knowledge and informed consent, from

participating in pending class actions against Syngenta in the MDL court in Kansas and

Minnesota. *See supra* ¶¶ 72-228. Defendants violated candor and misrepresented material

facts through affirmative misstatements and omissions by misleading the class action

courts to allow Defendants to automatically exclude Farmers from the MDL and

Minnesota class actions, thereby depriving Farmers of due process and the opportunity to

110

exercise their individual right to be part of the class or opt-out of it. *See supra* ¶¶ 160-88.

Defendants violated candor and misrepresented material facts through affirmative

misstatements and omissions by failing to disclose fee share agreements with class

counsel and pursuing efforts to extract an unreasonable fee. *See supra* ¶¶ 60-228.

281.    Special circumstances exist such that Defendants' omission of material

facts was fraudulent. Minnesota courts recognize that an attorney-client relationship is a

fiduciary relationship. Defendants had obligations to honestly market their services and

inform Farmers that they were putative members of the federal MDL class action and

procure informed consent before Farmers were excluded from class participation. At all

times since the inception of Defendants' "mass tort … individual suit" attorney fee fraud

scheme in 2014 through the present, Defendants have deceptively placed their self-

serving financial interests above Farmers' interests. *See supra* ¶¶ 60-228.

282.    Farmers and the courts relied on Defendants' fiduciary and ethical

obligations and deceptive solicitations and misrepresentations and omissions. The class

action courts relied on Defendants' misrepresentations and omissions to believe that

Defendants had complied with their fiduciary and ethical obligations to gain informed

consent from individual Farmers for exclusion from the class certification proceedings

and notice and opt-out procedures. Farmers were deprived of the opportunity to exercise

their individual right to be part of the class or opt-out; they were not given court-

approved notice that they were members of the class proceedings nor were they able to

make their own choice in deciding whether or not to opt out of the MDL and Minnesota

classes. Farmers have been deprived of the opportunity to make an informed decision as

to whether to pursue an individual claim or a class action claim without representation by

Defendants.

283.    Farmers are injured by Defendants' deceptive and fraudulent practices. This

lawsuit provides a public benefit to the 60,000 Farmers and all consumers in Minnesota

and across the United States who rely upon an honest and ethical market for legal

services. Through the Minnesota private attorney general statute, Minn. Stat. § 8.31,

Farmers seek all available remedies and equitable relief including a forfeiture of

Defendants' compensation for Farmers' claims, whether assessed by Defendants against

Farmers through the unlawful and void retainer agreements or court settlement

documents.

## COUNT V
## FALSE STATEMENT IN ADVERTISING ACT
## MINN. STAT. § 325F.67

284.    Farmers incorporate by reference and re-allege all prior paragraphs of this

Class Action Complaint.

285.    Minn. Stat. § 325F.67 (2008) provides, in part, that:

Any person, firm, corporation, or association who, with intent to sell or in anywise
dispose of merchandise, securities, service, or anything offered by such person,
firm, corporation, or association, directly or indirectly, to the public, for sale or
distribution, or with intent to increase the consumption thereof, or to induce the
public in any manner to enter into any obligation relating thereto, or to acquire
title thereto, or any interest therein, makes, publishes, disseminates, circulates, or

places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, or in any other way, an advertisement of any sort regarding merchandise, securities, service, or anything so offered to the public, for use, consumption, purchase, or sale, which advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such.

286.    Defendants' conduct described above constitutes multiple, separate violations of Minn. Stat. § 325F.67.  Each of the Defendants have placed before the public statements that are untrue, deceptive and misleading, with intent to sell or increase the consumption of services.  By failing to disclose and omitting material facts, Defendants have further made deceptive and fraudulent public statements in violation of the False Statement in Advertising Act. *See supra* ¶¶ 60-228.

287.    Farmers relied on Defendants' deceptive solicitations and misrepresentations and omissions. Farmers were deprived of the opportunity to exercise their individual right to be part of the class or opt-out; they were not given court-approved notice that they were members of the class proceedings nor were they able to make their own choice in deciding whether or not to opt out of the MDL and Minnesota classes. Farmers have been deprived of the opportunity to make an informed decision as to whether to pursue an individual claim or a class action claim without representation by Defendants.

288.     Farmers are injured by Defendants' deceptive and fraudulent practices. This lawsuit provides a public benefit to the 60,000 Farmers and all consumers in Minnesota and across the United States who rely upon an honest and ethical market for legal services. Through the Minnesota private attorney general statute, Minn. Stat. § 8.31, Farmers seek all available remedies and equitable relief including a forfeiture of Defendants' compensation for Farmers' claims, whether assessed by Defendants against Farmers through the unlawful and void retainer agreements or court settlement documents.

## COUNT VI
## UNIFORM DECPTIVE TRADE PRACTICES ACT
## MINN. STAT. §§ 325D.43-48

289.     Farmers incorporate by reference and re-allege all prior paragraphs of this Class Action Complaint.

290.     Minn. Stat. § 325D.44, subdivision 1 (2008) provides, in part:

A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

(5)     represents that goods or services have … characteristics … benefits …that they do not have …

(7)     represents that goods or services are of a particular standard, quality, or grade … if they are of another;

(8)     disparages the services … of another by false or misleading representation of fact …

(9)      advertises goods or services with intent not to sell them as advertised …

(13)     engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

114

291.    Defendants' conduct described above constitutes multiple, separate violations of Minn. Stat. § 325D.44, subd. 1. Defendants have engaged in deceptive practices by representing that legal services have characteristics and benefits that they do not have; representing that services are of a particular standard, quality, or grade when they are of another; disparaging the services of another by false or misleading representations of fact, advertising services with intent not to sell them as advertised; and engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding. *See supra* ¶¶ 60-228. By failing to disclose and omitting material facts, Defendants have further engaged in deceptive and fraudulent practices in violation of the Uniform Deceptive Trade Practices Act. *Id.*

292.    Farmers relied on Defendants' deceptive solicitations and misrepresentations and omissions. Farmers were deprived of the opportunity to exercise their individual right to be part of the class or opt-out; they were not given court-approved notice that they were members of the class proceedings nor were they able to make their own choice in deciding whether or not to opt out of the MDL and Minnesota classes. Farmers have been deprived of the opportunity to make an informed decision as to whether to pursue an individual claim or a class action claim without representation by Defendants.

293.    Farmers are injured by Defendants' deceptive and fraudulent practices. This lawsuit provides a public benefit to the 60,000 Farmers and all consumers in Minnesota

and across the United States who rely upon an honest and ethical market for legal

services. Through the Minnesota private attorney general statute, Minn. Stat. § 8.31,

Farmers seek all available remedies and equitable relief including a forfeiture of

Defendants' compensation for Farmers' claims, whether assessed by Defendants against

Farmers through the unlawful and void retainer agreements or court settlement

documents.

**COUNT VII**
**MISCONDUCT BY ATTORNEYS,**
**PENALTIES FOR DECEIT OR COLLUSION,**
**MINN. STAT. §§ 481.071 AND 481.07**

294.   Farmers incorporate by reference and re-allege all prior paragraphs of this

Class Action Complaint.

295.   Minn. Stat. § 481.071 (*Misconduct By Attorneys*) provides (emphasis

added):

> Every attorney or counselor at law who shall be guilty of any deceit or
> collusion, or shall consent thereto, with intent to deceive the court or any
> party, or who shall delay the attorney's client's suit with a view to the
> attorney's own gain, shall be guilty of a misdemeanor and, in addition to the
> punishment prescribed by law therefor, shall forfeit to the party injured
> treble damages, *to be recovered in a civil action*.

296.   Minn. Stat. § 481.07 (*Penalties For Deceit Or Collusion*) provides

(emphasis added):

> An attorney who, with intent to deceive a court or a party to an action or
> judicial proceeding, is guilty of or consents to any deceit or collusion, shall
> be guilty of a misdemeanor; and, in addition to the punishment prescribed
> therefor, the attorney shall be liable to the party injured in treble damages

116

*… recoverable in a civil action.*

297.    Minn. Stat. § 481.071 is an independent cause of action and not just a remedy. The statute is not a codification of common law fraud but a unique statute of ancient origin, going back to the First Statute of Westminster, intended to protect the integrity of the courts and foster their truth-seeking function.

298.    Minnesota courts misunderstand that § 481.071 is an independent cause of action and not a codification of common law based on dicta in *Smith v. Chaffee*, 232 N.W. 515 (Minn. 1930), with no historic or statutory analysis. The Second U.S. Circuit Court of Appeals and the New York Court of Appeals in *Amalfitano v. Rosenberg*, 572 F.3d 91 (2nd Cir. 2009), *Amalfitano v. Rosenberg*, 533 F.3d 117 (2nd Cir. 2008), and *Amalfitano v. Rosenberg*, 903 N.E.2d 265, 268 (N.Y. 2009), recognized that New York Judiciary Law § 483 – the model for the Minnesota legislature in adopting § 481.071 and with identical language – is an independent cause of action that allows a party to pursue a claim for treble damages for attorney deceit during a judicial proceeding, even attempted but unsuccessful deceit.

299.    The Court for this Class Action Complaint should recognize and follow the persuasive New York and Second Circuit rulings as applied to § 481.071. *See Baker v. Ploetz*, 616 N.W.2d 263, 272 (Minn. 2000) ("[W]hen the [Minnesota] legislature adopted New York's penal code by enacting section 481.071 over 100 years ago, it in effect adopted New York's interpretation [of the statute].").

117

300.    Alternatively, Farmers will ask the Court to certify to the Minnesota

Supreme Court under Minn. Stat. § 480.065, subd. 3, whether § 481.071 (*Misconduct By*

*Attorneys*) ("to be recovered in a civil action"): (1) is an independent cause of action; (2)

applies to attempted, but unsuccessful, deceit; and (3) whether the treble damage remedy

applies to a forfeiture of an attorney fee. In regard to the third question, the Minnesota

Supreme Court recognized in *Gilchrist v. Perl*, 387 N.W.2d 412, 419 (Minn. 1986), that

whether the treble damage remedy applies to a forfeiture of a fee is an open question.

With a correct understanding of the historical basis and interpretation § 481.071, as

recognized by the *Amalfitano* courts – statute applies to attempted, but unsuccessful,

deceit – the Minnesota Supreme Court should surely say yes to that question.

301.    The Minnesota Supreme Court can then recognize that § 481.07 (*Penalties

For Deceit Or Collusion*) ("recoverable in a civil action") is a remedy for deceit or

collusion in the context of an independent claim under § 481.071 *or* a common law fraud

claim.

302.    In the interest of pleading in the alternative, Farmers set forth a cause of

action under § 481.071, the essential cause of action for Count VII of this Class Action

Complaint, and 481.07, a remedy for deceit or collusion in the context of § 481.071 or a

common law fraud claim, and both statutes are set forth as a remedy in the request for a

fee forfeiture and monetary damage.

303.    Defendants deceptively solicited individual Farmers to sign attorney-client

118

retainer contracts with a 40 percent contingent fee for claims by each Farmer.

304.   Defendants secretly excluded each of the individual Farmers, without their knowledge and informed consent, through Joint Prosecution Agreements, from pending class actions against Syngenta in the MDL court in Kansas and Minnesota.

305.   Defendants dishonestly informed the presiding courts, through material misrepresentations and omissions, that Defendants had satisfied their ethical and fiduciary obligations by advising individual Farmers as to whether it was in their best interest to be excluded from the MDL and Minnesota class proceedings, and procuring informed consent from individual Farmers to be excluded from the class actions.

306.   Defendants dishonestly informed Farmers through the mail and in direct solicitations that "only those who sign up (with Defendants) are eligible to pursue claims."

307.   Defendants delivered deceptive and misleading litigation updates to Farmers, never informing Farmers that they were members of putative class actions in the MDL and Minnesota and secretly excluded by Defendants from the class action proceedings to accomplish Defendants' "mass tort …individual suit" attorney fee fraud scheme and provide financial gains to Defendants at the expense of the uninformed and deceived Farmers.

308.   Language in the Joint Prosecution Agreements prohibits MDL and Minnesota class counsel and signatories to the agreements from interfering with

Defendants' 40 percent contingent fee contracts. This language shows Defendants'
attempt to deceive Farmers to pay a 40 percent fee through an attempt to reduce the
possibility of objections and thereby the possibility that the courts may cap Defendants'
contingent fee contracts at a lower percentage.

309.    Another example of Defendants' attempted scheme of deceit is shown
through the effort in the September 25, 2017 settlement term sheet to transfer Farmers'
individual lawsuits, after three years of litigation in the Minnesota courts, to a Texas
court in Watts Guerra's backyard to address and enforce Defendants' 40 percent
contingent fee contracts.

310.    In the Settlement Agreement, Defendants do not acknowledge the Joint
Prosecution Agreements and the exchange of money and favors with MDL and
Minnesota class counsel, and an apparent fee share agreement with Settlement Class
Counsel, and Defendants' intent to procure a double-dip of attorneys' fees from
individual Farmers through the claim administration process and Defendants' 40 percent
contingent fee contracts.

311.    Farmers and the courts relied on Defendants' fiduciary and ethical
obligations and deceptive misrepresentations and omissions. The class action courts
relied on Defendants' misrepresentations and omissions to believe that Defendants had
complied with their fiduciary and ethical obligations to gain informed consent from
individual Farmers for exclusion from the class certification proceedings and notice and

opt-out procedures. Farmers were deprived of the opportunity to exercise their individual

right to be part of the class or opt-out; they were not given court-approved notice that

they were members of the class proceedings nor were they able to make their own choice

in deciding whether or not to opt out of the MDL and Minnesota classes. Farmers were

deprived of the opportunity to make an informed decision as to whether to pursue an

individual claim or a class action claim without representation by Defendants.

312.    Farmers are injured by Defendants' deceptive and fraudulent practices and

breach of fiduciary duties and seek all available remedies and equitable relief, including a

forfeiture of Defendants' compensation for Farmers' claims against Syngenta, whether

assessed by Defendants against Farmers through the unlawful and void retainer

agreements or court settlement documents, and costs and legal fees in the prosecution of

their claims against Defendants.

313.    Farmers request monetary damages to the extent that Defendants claim and

capture any compensation, and treble the forfeited compensation and monetary damage,

pursuant to Minn. Stat. §§ 481.071 and 481.07.

## COUNT VIII
## BREACH OF FIDUCIARY DUTY

314.    Farmers incorporate by reference and re-allege all prior paragraphs of this

Class Action Complaint.

315.    To prevail on a claim for breach of fiduciary duty, the plaintiff must prove:

(1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damages

proximately caused by the breach.

316.    Minnesota courts recognize that an attorney-client relationship is a fiduciary relationship.

317.    A fiduciary duty is the highest standard of duty implied by law. Minnesota law imposes on a fiduciary the highest obligations of good faith, loyalty, fidelity, fair dealing and full disclosure of material facts affecting the client's interests. This duty includes, among other things, a duty to act in the best interests of another. A fiduciary owes to another the duties of good faith, trust, confidence, and candor.

318.    Defendants violate their fiduciary obligations and injure Farmers by deceptively soliciting Farmers to sign 40 percent contingent fee retainer contracts and secretly excluding Farmers, without their knowledge and informed consent, from participating in class certification proceedings against Syngenta in the MDL court in Kansas and Minnesota. *See supra* ¶¶ 60-228. Defendants violate their fiduciary obligations to Farmers by misleading the class action courts to allow Defendants to automatically exclude Farmers from the MDL and Minnesota class actions, thereby depriving Farmers of due process and the opportunity to exercise their individual right to be part of the class or opt-out of it. *See supra* ¶¶ 160-88. Defendants violate their fiduciary obligations through undisclosed fee share agreements with class counsel and efforts to extract an unreasonable fee. *See supra* ¶¶ 160-217.

319.    A lawyer who breaches his or her fiduciary duty to a client forfeits his or

her compensation. The client is deemed injured even if no actual loss results.

320.    Farmers and the courts relied on Defendants' fiduciary and ethical obligations and deceptive misrepresentations and omissions. The class action courts relied on Defendants' misrepresentations and omissions to believe that Defendants had complied with their fiduciary and ethical obligations to gain informed consent from individual Farmers for exclusion from the class certification proceedings and notice and opt-out procedures. Farmers were deprived of the opportunity to exercise their individual right to be part of the class or opt-out; they were not given court-approved notice that they were members of the class proceedings nor were they able to make their own choice in deciding whether or not to opt out of the MDL and Minnesota classes. Farmers have been deprived of the opportunity to make an informed decision as to whether to pursue an individual claim or a class action claim without representation by Defendants.

321.    Farmers are injured by Defendants' deceptive and fraudulent practices and breach of fiduciary duties and seek all available remedies and equitable relief, including a declaration that Defendants' retainer agreements with Farmers are void *ab initio* and that Defendants have forfeited their claim to any compensation from individual Farmers, and that Defendants have waived any quantum meruit claim against Farmers through their dishonest representations and omissions and conduct.[4]

---

[4].   Farmers do not dispute the quality of Defendants' work, thereby removing a requirement for an affidavit of expert review under Minn. Stat. § 544.42, subd. 2(1). Any lay person and jury member can readily conclude that Defendants' deceptive solicitations

## COUNT IX
## FRAUDULENT MISREPRESENTATION

322.    Farmers incorporate by reference and re-allege all prior paragraphs of this Class Action Complaint.

323.    The elements of a fraudulent misrepresentation claim are: (1) a false representation by a party of a past or existing material fact that is susceptible of knowledge; (2) the person making the misrepresentation made it either with knowledge of its falsity or as if he or she had knowledge, but without actually knowing whether it was true or false; (3) the representation was made with the intention to induce another party to act in reliance on the representation; (4) the representation caused the other party to act in reliance; and (5) the other party suffered pecuniary damage as a result of that reliance.

324.    Silence may also constitute fraud. A failure to speak is actionable if there is a suppression of facts which one party is under a legal or equitable obligation to communicate to the other, and which the other party is entitled to have communicated to him. The Minnesota Supreme Court has identified three "special circumstances" in which silence may be fraudulent: (1) half-truths which mislead; (2) special knowledge of material facts to which the other party does not have knowledge; and (3) confidential or

---

while secretly excluding Farmers, without their knowledge and informed consent, from participating in class actions against Syngenta, violates the obligations of an attorney to a client. Nevertheless, attached and served with this Class Action Complaint is an affidavit of expert review.

fiduciary relationship.

325.   Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by deceptively soliciting Farmers to sign 40 percent contingent fee retainer contracts and secretly excluding Farmers, without their knowledge and informed consent, from participating in pending class actions against Syngenta in the MDL court in Kansas and Minnesota. *See supra* ¶¶ 60-228. Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by misleading the class action courts to allow Defendants to automatically exclude Farmers from the MDL and Minnesota class actions, thereby depriving Farmers of due process and the opportunity to exercise their individual right to be part of the class or opt-out of it. *See supra* ¶¶ 160-88. Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by failing to disclose fee share agreements with class counsel and pursuing efforts to extract an unreasonable fee. *See supra* ¶¶ 160-217.

326.   Farmers and the courts relied on Defendants' fiduciary and ethical obligations and deceptive misrepresentations and omissions. *See supra* ¶ 320.

327.   Farmers are injured by Defendants' deceptive and fraudulent practices and breach of fiduciary duties and seek all available remedies and equitable relief, including a declaration that Defendants' retainer agreements with Farmers are void *ab initio* and that Defendants have forfeited their claim to any compensation from individual Farmers, and

that Defendants have waived any quantum meruit claim against Farmers through their

dishonest representations and omissions and conduct.

## COUNT X
## NEGLIGENT MISREPRESENTATION

328. Farmers incorporate by reference and re-allege all prior paragraphs of this

Class Action Complaint.

329. The Minnesota Supreme Court and the Restatement (Second) of Torts

describe a negligent misrepresentation as follows:

> One who, in the course of his business, profession, or employment, or in a
> transaction in which he has a pecuniary interest, supplies false information
> for the guidance of others in their business transactions, is subject to
> liability for pecuniary loss caused to them by their justifiable reliance upon
> the information, if he fails to exercise reasonable care or competence in
> obtaining or communicating the information.

330. Defendants violated candor and misrepresented material facts through

affirmative misstatements and omissions by deceptively soliciting Farmers to sign 40

percent contingent fee retainer contracts and secretly excluding Farmers, without their

knowledge and informed consent, from participating in pending class actions against

Syngenta in the MDL court in Kansas and Minnesota. *See supra* ¶¶ 60-228. Defendants

violated candor and misrepresented material facts through affirmative misstatements and

omissions by misleading the class action courts to allow Defendants to automatically

exclude Farmers from the MDL and Minnesota class actions, thereby depriving Farmers

of due process and the opportunity to exercise their individual right to be part of the class

126

or opt-out of it. *See supra* ¶¶ 160-88. Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by failing to disclose fee share agreements with class counsel and pursuing efforts to extract an unreasonable fee. *See supra* ¶¶ 160-217.

331.    Farmers and the courts relied on Defendants' fiduciary and ethical obligations and deceptive misrepresentations and omissions. *See supra* ¶ 320.

332.    Farmers are injured by Defendants' deceptive and fraudulent practices and breach of fiduciary duties and seek all available remedies and equitable relief, including a declaration that Defendants' retainer agreements with Farmers are void *ab initio* and that Defendants have forfeited their claim to any compensation from individual Farmers, and that Defendants have waived any quantum meruit claim against Farmers through their dishonest representations and omissions and conduct.

## COUNT XI
## FRAUDULENT INDUCEMENT

333.    Farmers incorporate by reference and re-allege all prior paragraphs of this Class Action Complaint.

334.    A claim of fraudulent inducement to enter into a contract is that the defendant made an intentional action, statement, or omission, the misrepresentation was material to the decision to enter into a contract, the plaintiff reasonably relied on such misrepresentation, and the plaintiff suffered some degree of injury, usually economic harm.

335.   Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by deceptively soliciting Farmers to sign 40 percent contingent fee retainer contracts and secretly excluding Farmers, without their knowledge and informed consent, from participating in pending class actions against Syngenta in the MDL court in Kansas and Minnesota. *See supra* ¶¶ 60-228. Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by misleading the class action courts to allow Defendants to automatically exclude Farmers from the MDL and Minnesota class actions, thereby depriving Farmers of due process and the opportunity to exercise their individual right to be part of the class or opt-out of it. *See supra* ¶¶ 160-88. Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by failing to disclose fee share agreements with class counsel and pursuing efforts to extract an unreasonable fee. *See supra* ¶¶ 160-217.

336.   Farmers and the courts relied on Defendants' fiduciary and ethical obligations and deceptive misrepresentations and omissions. *See supra* ¶ 320.

337.   Farmers are injured by Defendants' deceptive and fraudulent practices and breach of fiduciary duties and seek all available remedies and equitable relief, including a declaration that Defendants' retainer agreements with Farmers are void *ab initio* and that Defendants have forfeited their claim to any compensation from individual Farmers, and that Defendants have waived any quantum meruit claim against Farmers through their

dishonest representations and omissions and conduct.

## COUNT XII
## FRAUDULENT EXECUTION

338.   Farmers incorporate by reference and re-allege all prior paragraphs of this Class Action Complaint.

339.   A claim of fraudulent execution of a contract is that: (1) a party knowingly misrepresented the character or essential terms of a proposed contract; (2) the party intended the misrepresentation to induce another to manifest assent to the contract; (3) the other party neither knew nor had reasonable opportunity to know of the character or essential terms of the proposed contract; and (4) the misrepresentation caused the other party to manifest asset to the contract. If fraud in the execution is proved, there is no contract at all and the contract is void *ab initio*.

340.   Farmers' retainer contracts state that Defendants would advise Farmers how to proceed with the claim – "in any manner they deem advisable" – and "use their professional judgment." Defendants did not provide honest advice and gain informed consent from Farmers. Defendants did not exercise professional judgment consistent with fiduciary and ethical obligations as attorneys to clients and officers of the court. Defendants knowingly misrepresented the reasons for the contract, the terms of the contract, and the value of the contract to growers, and intended the misrepresentations to induce Farmers to sign the contract. Farmers did not know and had no reason to know that they were members of putative class actions in the MDL, represented by class

counsel. Farmers did not know and had no reason to know that Defendants were pursuing a "mass tort … individual suit" attorney fee fraud scheme placing Defendants financial interests above the interests of Farmers. Farmers did not know that Defendants entered into agreements with MDL and Minnesota class counsel to automatically exclude Farmers from the class action proceedings, thereby depriving Farmers of their due process rights to notice and advice as to an individual Farmers' best interests. Defendants' misrepresentations and omissions caused the deceived and unknowing Farmers to sign 40 percent contingent fee contracts and pursue individual lawsuits when they were putative members of the MDL class actions represented by class counsel.

341.   Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by deceptively soliciting Farmers to sign 40 percent contingent fee retainer contracts and secretly excluding Farmers, without their knowledge and informed consent, from participating in pending class actions against Syngenta in the MDL court in Kansas and Minnesota. *See supra* ¶¶ 60-228. Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by misleading the class action courts to allow Defendants to automatically exclude Farmers from the MDL and Minnesota class actions, thereby depriving Farmers of due process and the opportunity to exercise their individual right to be part of the class or opt-out of it. *See supra* ¶¶ 160-88. Defendants violated candor and misrepresented material facts through affirmative misstatements and omissions by failing to disclose fee

share agreements with class counsel and pursuing efforts to extract an unreasonable fee. *See supra* ¶¶ 160-217.

342. Farmers and the courts relied on Defendants' fiduciary and ethical obligations and deceptive misrepresentations and omissions. *See supra* ¶ 320.

343. Farmers are injured by Defendants' deceptive and fraudulent practices and breach of fiduciary duties and seek all available remedies and equitable relief, including a declaration that Defendants' retainer agreements with Farmers are void *ab initio* and that Defendants have forfeited their claim to any compensation from individual Farmers, and that Defendants have waived any quantum meruit claim against Farmers through their dishonest representations and omissions and conduct.

## COUNT XIII
## AIDING AND ABETTING
## BREACH OF FIDUCIARY OBLIGATIONS AND FRAUD

344. Farmers incorporate by reference and re-allege all prior paragraphs of this Class Action Complaint.

345. Watts and Guerra and Watts Guerra, LLP and its joint venture partners each aided and abetted the breach of fiduciary obligations and fraud of each other Defendant by jointly participating in false advertising and marketing efforts to persuade Farmers that Defendants' "mass tort … individual suit" model for litigation of claims against Syngenta was superior to class action proceedings pending in the federal MDL in Kansas.

346. Watts and Guerra and Watts Guerra, LLP provided the talking points on

how "*lawyers will get all the money* and the *farmers may get a gift certificate*" in class actions. The joint venture partners repeated these false statements verbatim through internet solicitations and at so-called town-hall meetings throughout the Corn Belt. See supra ¶¶ 72-188.

347.   Each Defendant aided and abetted the breach of fiduciary obligations and fraud of each other Defendant by concealing and never discussing with Farmers the terms of the Joint Prosecution Agreements automatically excluding Farmers from the MDL and Minnesota class proceedings. Defendants aided and abetted each other's deceit to attempt to extract a 40 percent contingent attorney fee from Farmers for claims against Syngenta with language in the JPA and MPA prohibiting federal MDL and Minnesota class counsel from interfering with Defendants' 40 percent contingent fee contracts. This language shows Defendants' coordinated attempt to deceive Farmers into paying a 40 percent contingent fee through an attempt to reduce the possibility of objections and thereby the possibility that the MDL court may cap Defendants' contingent fee contracts at a lower percentage.

348.   Farmers and the courts relied on Defendants' fiduciary and ethical obligations and deceptive misrepresentations and omissions. *See supra* ¶ 320.

349.   Farmers are injured by Defendants' deceptive and fraudulent practices and breach of fiduciary duties and seek all available remedies and equitable relief, including a declaration that Defendants' retainer agreements with Farmers are void *ab initio* and that

Defendants have forfeited their claim to any compensation from individual Farmers, and

that Defendants have waived any quantum meruit claim against Farmers through their

dishonest representations and omissions and conduct.

**COUNT XIV**
**CIVIL CONSPIRACY**

350.    Farmers incorporate by reference and re-allege all prior paragraphs of this

Class Action Complaint.

351.    According to Minnesota courts, the elements of civil conspiracy include (1)

an agreement between two or more people to commit an unlawful act or a lawful act by

unlawful means, (2) a tort or criminal act must have occurred, and (3) the plaintiff must

have been hurt or damaged. The essential elements for establishing a case of civil

conspiracy are that the plaintiff must have been injured by a tortuous or criminal act.  The

Supreme Court of the United States echoed these elements, holding a plaintiff could bring

suit for civil conspiracy only if he had been injured by an act that was itself tortious.

352.    Watts and Guerra and Watts Guerra, LLP and its joint venture partners

participated in a civil conspiracy by deceptively soliciting Farmers to sign 40 percent

contingent fee retainer agreements with Defendants and secretly excluding Farmers,

without their knowledge and consent, a fraud of omission, from participating in pending

class actions against Syngenta in the MDL court in Kansas and Minnesota. *See supra* ¶¶

60-228.

353.    Farmers and the courts relied on Defendants' fiduciary and ethical

133

obligations and deceptive misrepresentations and omissions. *See supra* ¶ 320.

354.    Farmers are injured by Defendants' deceptive and fraudulent practices and breach of fiduciary duties and seek all available remedies and equitable relief, including a declaration that Defendants' retainer agreements with Farmers are void *ab initio* and that Defendants have forfeited their claim to any compensation from individual Farmers, and that Defendants have waived any quantum meruit claim against Farmers through their dishonest representations and omissions and conduct.

## DECLARATORY AND INJUNCTIVE RELIEF

355.    Farmers incorporate by reference and re-allege all prior paragraphs of this Class Action Complaint.

356.    Farmers are entitled to declaratory and injunctive relief under the statutory claims and equitable relief under the common law claims, under the maxim that every injury has a remedy. A request for declaratory and injunctive relief can always be made under Fed. R. Civ. P. 23 and Fed. R. Civ. P. 57 in any case in which the plaintiffs and the class have an ongoing relationship with the defendant that is affected or could be affected by a policy or practice on the part of the defendant. Farmers also request declaratory relief under 28 U.S.C. § 2201 which authorizes declaratory relief to construe a contract and § 2202 which authorizes the Court to provide declaratory and injunctive relief and assess applicable statutory damages and penalties for each invalid contract under authorities such as RICO, 18 U.S.C. § 1961, *et seq.*, the Prevention Of Consumer Fraud

Act, Minn. Stat. §§ 325F.68-70, False Statement In Advertising Act, Minn. Stat. § 325F.67, Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-48, Misconduct by Attorneys/Penalties for Deceit or Collusion, Minn. Stat. §§ 481.071 and 481.07, the Minnesota private attorney general statute, Minn. Stat. § 8.31, and common law claims of breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, fraudulent inducement, fraudulent execution, aiding and abetting breach of fiduciary obligations and fraud, and civil conspiracy.

357.    Farmers ask the Court to declare that Defendants' retainer agreements with Farmers are void *ab initio* and that Defendants have forfeited their claim to any compensation from individual Farmers, and that Defendants have waived any quantum meruit claim against Farmers through their dishonest and unlawful representations and omissions and conduct.

## MONETARY DAMAGES

358.    Farmers incorporate by reference and re-allege all prior paragraphs of this Class Action Complaint.

359.    Farmers request a forfeiture of Defendants' compensation or claimed compensation for Farmers' claims against Syngenta, whether assessed by Defendants against Farmers through the unlawful and void retainer agreements or court settlement documents, and costs and legal fees in the prosecution of their claims against Defendants.

360.    Farmers request monetary damages to the extent that Defendants claim and

135

capture any compensation, and treble the forfeited compensation and monetary damage, pursuant to 18 U.S.C. § 1964(c) and Minn. Stat. §§ 481.071 and 481.07.

## JURY TRIAL DEMAND

Farmers hereby demand a trial by jury with respect to all issues so triable.

## REQUEST FOR RELIEF

1.      An order certifying that this action may be maintained as a class action for the Class, designating Plaintiffs as the named representatives of the Class, and appointing Farmers' counsel to represent the Class.

2.      Declaring under 28 U.S.C. § 2201 and 2202 that Defendants' acts and omissions described in this Class Action Complaint constitute multiple, separate violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq*., Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68-70, False Statement in Advertising Act, Minn. Stat. § 325F.67, Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-48, Misconduct by Attorneys/Penalties for Deceit and Collusion, Minn. Stat. §§ 481.071 and 481.07, and common law breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, fraudulent inducement, fraudulent execution, aiding and abetting breach of fiduciary obligations and fraud, and civil conspiracy.

3.      Declaring that Defendants' retainer agreements with Farmers are void *ab initio* and that Defendants have forfeited their claim to any compensation from individual

136

Farmers, and that Defendants have waived any quantum meruit claim against Farmers through their dishonest and unlawful representations and omissions and conduct.

4.      Trebling the forfeited compensation and monetary damage, under RICO's civil remedies provision, 18 U.S.C. § 1964(c), and awarding attorney fees under the same section.

5.      Trebling the forfeited compensation and monetary damage, under Minn. Stat. §§ 481.071 and 481.07.

6.      Awarding civil penalties to Farmers under the applicable laws.

7.      Awarding Farmers the costs of suit, including costs of investigation and attorneys' fees as authorized by 18 U.S.C. § 1964(c) and Minn. Stat. § 8.31, subd. 3a.

8.      Entering Judgment in favor of Farmers and against Defendants, jointly and severally, for all forfeited compensation and damages and attorneys' fees and costs.

9.      Granting such other and further relief as the Court deems just and equitable.

Dated: April 24, 2018

By: /s/ Douglas J. Nill
      Douglas J. Nill (#0194876)

**DOUGLAS J. NILL, PLLC**
**d/b/a FARMLAW**
2050 Canadian Pacific Plaza
120 South Sixth Street
Minneapolis, MN  55402-1801
Telephone:  (612) 573-3669
Email:  dnill@farmlaw.com

Counsel for Plaintiffs and Proposed Class
Of Farmers

137